[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 99-13824

———————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/31/00
THOMAS  K. KAHN
CLERK

D. C. Docket No. 99-01743-CV-S-S

FEDERAL RESERVE BANK OF ATLANTA,

Plaintiff-Appellant,

versus

ROBERT R. THOMAS,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama

———————————————

(July 31, 2000)

Before CARNES, MARCUS and FARRIS,[*] Circuit Judges.

MARCUS, Circuit Judge:

---

[*]The Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

This appeal raises a question of first impression regarding a Federal Reserve Bank's entitlement to proceed in federal court even where diversity jurisdiction does not exist and the underlying dispute involves so peculiarly a creature of state law as a state worker's compensation statute. Appellant Federal Reserve Bank of Atlanta ("Federal Reserve") initiated this case by filing a "Petition for Determination of Disputed Claim for Worker's Compensation Benefits," seeking a declaratory judgment determining its liability under Alabama's worker's compensation statute to Appellee Robert R. Thomas, a Federal Reserve employee who allegedly injured his back on the job. The Federal Reserve claimed federal subject matter jurisdiction on the basis of 12 U.S.C. § 632, which creates federal jurisdiction over "all suits of a civil nature at common law or in equity to which any Federal Reserve Bank shall be a party." Thomas moved to dismiss, arguing that the dispute belonged in the Alabama state courts. The district court granted the motion, finding that section 632 was inapplicable because the Federal Reserve's cause of action was statutory and therefore was not a suit "at common law or in equity." As alternative grounds for dismissal, the court exercised its discretion to abstain in favor of a related case that Thomas had filed in state court, and also exercised its discretionary authority to decline to hear declaratory judgment suits.

2

The Federal Reserve now appeals, arguing that the district court's purported "literal" reading of the language of section 632 fails to take account of traditional interpretations of the phrase "all suits of a civil nature at common law or in equity." Moreover, asserts the Federal Reserve, dismissing this action in favor of Thomas's later-filed lawsuit in state court was an abuse of discretion, because under section 632 the Federal Reserve has the absolute right to remove that suit at any time before trial. We agree that the Federal Reserve was entitled to pursue this lawsuit in federal court, and therefore reverse the order of dismissal and direct the district court to reinstate the Federal Reserve's action.

I.

The relevant background and procedural history are straightforward and undisputed. The Federal Reserve is a federally-chartered Federal Reserve Bank operating a branch in Birmingham, Alabama. Thomas, an employee of that branch, allegedly injured his back on the job. The Federal Reserve paid Thomas certain benefits, but has disputed others.

On July 7, 1999, the Federal Reserve filed its "Petition" with the District Court for the Northern District of Alabama. It alleged that a dispute had arisen between the parties as to whether Thomas's injury occurred in the course of his employment, whether he was permanently disabled, and whether it owed him any

3

benefits under Alabama's Worker's Compensation Act. It sought a declaratory judgment regarding its rights and obligations with respect to Thomas pursuant to the Act. Within two days after the Federal Reserve filed its lawsuit, Thomas filed his own worker's compensation claim against the Federal Reserve in the Circuit Court of Jefferson County, Alabama. The Federal Reserve subsequently attempted to remove that lawsuit to the Northern District of Alabama, where it currently is stayed pending resolution of this appeal.

In its Petition the Federal Reserve identified two grounds for federal subject matter jurisdiction: 12 U.S.C. § 632 and 28 U.S.C. § 1332, the diversity statute. In his two-page motion to dismiss for lack of subject matter jurisdiction, Thomas asserted simply "it is clear from the Alabama Worker's Compensation Act, 12 U.S.C.A. § 632, and 28 U.S.C.A. § 1445(c) (workers compensation claims are non-removable actions) that proper jurisdiction and administration of this matter would be in the Circuit Court of Jefferson County, Alabama."

In an order and memorandum opinion dated August 31, 1999, the district court granted the motion and dismissed the Federal Reserve's action. First, the court determined that 12 U.S.C. § 632 did not provide a basis for subject matter jurisdiction over the Federal Reserve's claim, because that claim was predicated on a state statute (the Alabama Worker's Compensation Act), and claims based on

4

statute are not "suits of a civil nature at common law or in equity" as required by section 632.  Second, the court ruled that it would abstain from exercising jurisdiction under section 632, even if such jurisdiction existed, under the reasoning of Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S. Ct. 1070, 87 L. Ed. 1407 (1943) because the underlying claim was based on state law and an adequate state court remedy was available.  Third, the court determined that no diversity jurisdiction existed because the amount in controversy fell below $75,000.  Finally, the court ruled that even if jurisdiction existed, it would exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to refuse to hear the Federal Reserve's claim.

In this appeal, the Federal Reserve challenges the district court's determination that section 632 is inapplicable, its decision to abstain on the basis of Great Lakes, and its decision to decline jurisdiction pursuant to the Declaratory Judgment Act.  The Federal Reserve does not appeal the district court's finding that no diversity jurisdiction exists.

## II.

The proper standard of review is clear.  The district court's determination that 12 U.S.C. § 632 does not encompass claims predicated on a state statute, and therefore does not provide a basis for subject matter jurisdiction over this lawsuit,

5

raises a pure question of law that is reviewed de novo. See, e.g., Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1060 (11th Cir. 1994). Although Thomas in his brief states that the district court "did not abuse its discretion in finding that Thomas' workers' compensation claims fall outside of" section 632, Appellee's Brief at 5, he cites no case law to establish that such a finding should be reviewed under an abuse of discretion standard. The parties agree that the district court's alternative decisions to dismiss the case pursuant to Great Lakes and 28 U.S.C. § 2201 are reviewable for abuse of discretion. See Old Republic Union Ins. Co. v. Tillis Trucking Co., 124 F.3d 1258, 1260 (11th Cir. 1997), cert. denied, 523 U.S. 1047, 118 S. Ct. 1363, 140 L. Ed. 2d 513 (1998).

III.

A.

We first address whether 12 U.S.C. § 632 creates federal subject matter jurisdiction over a lawsuit by a Federal Reserve Bank based solely on a state statute. Section 632 provides in pertinent part:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any Federal Reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any Federal Reserve bank which is a defendant in any such suit may, at any time before the trial thereof, remove such suit from a State court into the district court . . . .

6

12 U.S.C. § 632. The district court found that this provision does not create federal jurisdiction over an action based on state statute, adopting what it described as the "literal" meaning of the phrase "all suits of a civil nature at common law or in equity." The court expressly acknowledged the ample case law stating that section 632 "'reflects a congressional policy to have any litigation affecting the Federal Reserve System centered in a federal forum to promote uniformity of decision.'" Dist. Ct. Op. at 3 (citation omitted). The court nevertheless concluded that under the doctrine of expressio unius est exclusio alterius -- a principle of statutory interpretation meaning that the expression of one thing implies the exclusion of another -- section 632 does not confer jurisdiction over a state statutory action because such an action is not one at common law or in equity. The court further explained that because Alabama's worker's compensation law is a "creature of statute," and because "[r]ecovery under such statutes is based neither on common law nor principles of equity," section 632 did not provide a basis for jurisdiction here. Id. at 4-5.

The Federal Reserve argues that the district court improperly interpreted section 632 to exclude claims based on a state statute. It asserts that the district court failed to consider the entire phrase "all suits of a civil nature at common law or in equity," and instead concentrated solely on the language "at common law or

7

in equity." The Federal Reserve contends that the relevant language has always been construed to include statutory claims. It also asserts that the history of section 632 reinforces this interpretation, because Congress's paramount concern was ensuring that Federal Reserve Banks do not face inconsistent regulation in the various state courts. The Federal Reserve adds that virtually all of the case law regarding section 632 states or assumes that the provision authorizes federal jurisdiction over all civil actions involving the Federal Reserve Banks, including state statutory claims. Thomas responds only that because "the Federal Reserve [has] elected to be placed under the Worker's Compensation Act of Alabama . . . the proper jurisdiction and administration of this matter would be in the" Alabama courts. Appellee's Brief at 6.

Determining whether section 632 provides a basis for jurisdiction over this lawsuit requires an interpretation of the phrase "all suits of a civil nature at common law or in equity." Familiar canons of statutory construction guide our interpretation. As recently summarized by this Circuit in Harris v. Garner, -- F.3d --, No. 98-8899 (11th Cir. June 27, 2000) (en banc), the starting point for all statutory interpretation is the language of the statute itself. We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and if the statutory language is clear, no further inquiry is appropriate.

8

Id. If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent. See, e.g., Halperin v. Regional Adjustment Bureau, Inc., 206 F.3d 1063, 1067 (11th Cir. 2000) (if an "'internal inconsistency' or ambiguity exists the analysis shifts to 'extrinsic sources of congressional intent'") (quoting Alumax Inc. v. Commissioner of Internal Revenue, 165 F.3d 822, 824 (11th Cir.1999)).

As an initial matter, therefore, we must examine whether the pertinent statutory language has a plain and ordinary meaning. The district court essentially concluded that the phrase "at common law or in equity" has such a meaning, although in fact the court defined the phrase only by saying what it does not include (claims based on statute). There are at least two problems with this approach.

First, we must look at the entirety of the pertinent statutory language -- in other words, the full phrase "all suits of a civil nature at common law or in equity," not just the words "at common law or in equity." See, e.g., United States v. DBB, Inc., 199 F.3d 1277, 1280 (11th Cir. 1999) ("We do not look at one word or term in isolation but instead we look to the entire statutory context."); United States v. McLemore, 28 F.3d 1160, 1162 (11th Cir. 1994) ("In interpreting the language of a statute . . . we do not look at one word or one provision in isolation, but rather look

to the statutory scheme for clarification and contextual reference.").  Courts interpreting the full phrase in other contexts have given it an extremely broad reading that does not exclude claims based on statute.  Indeed, in Weems v. McCloud, 619 F.2d 1081 (5th Cir. 1980), the former Fifth Circuit, in binding precedent, examined the same phrase as it appeared in 12 U.S.C. § 1819(b)(2)(A), which then provided that "[a]ll suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof . . . ."[1]  The court found that the phrase encompassed an action based on the Georgia statutory law to confirm a sale of property.  619 F.2d at 1083-1088.  According to the court:

> "The phrase 'suits at common law and in equity' embraces not only ordinary actions and suits, but includes all the proceedings carried on in the ordinary law and equity tribunals as distinguished from proceedings in military, admiralty, and ecclesiastical courts.  It is a very comprehensive term, and is understood to apply to any proceedings in a court of justice by which an individual pursues a remedy which the law affords."

---

[1]Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Id. at 1088 (emphasis added) (quoting In re Silvies River, 199 F. 495, 501 (D.C. Or. 1912)).[2] Weems, therefore, suggests that the ordinary meaning of the phrase is different and far more expansive than the meaning assumed by the district court in this case. In the same manner, other courts interpreting the phrase "all suits of a civil nature, at common law or in equity" as it appeared in the prior version of the diversity statute described that phrase as encompassing "all suits of a civil nature." Cross v. Ryan, 124 F.2d 883, 885-86 (7th Cir. 1941) (emphasis added).

Second, even looking solely at the words "at common law or in equity," it is far from clear that the term "common law" has a plain and ordinary meaning that invariably excludes claims based on statute. Black's Law Dictionary (7th ed. 1999 at 270) provides the most familiar contemporary use of the term "common law," defining it as "the body of law derived from judicial decisions, rather than from statutes . . . ." The district court presumably relied on such a definition in its analysis of section 632. But even Black's provides multiple definitions for the term, as do other dictionaries and treatises. Indeed, in its brief the Federal Reserve quotes an excerpt from an earlier edition of Black's that defines the common law as including principles "'which rest[] confessedly upon custom or statute.'"

_____

[2]See also Lazuka v. FDIC, 931 F.2d 1530, 1535 (11th Cir. 1991) (in 12 U.S.C. § 1819 "Congress used very strong language to afford the FDIC every possibility of having a federal forum within the limits of Article III").

Appellant's Brief at 18 (quoting Black's Law Dictionary (4th ed. 1968)). Simply put, "'the precise shade of meaning in which this chameleon phrase is used depends upon the particular context and upon the contrast that is being made.'" B. Garner, A Dictionary of Modern Legal Usage 177 (2d ed. 1995) (quoting Glanville Williams, Learning the Law 25 n.1 (11th ed. 1982)).

In short, it can hardly be said that the "literal" language of section 632 necessarily yields the result urged by Thomas and adopted by the district court. Indeed, to the extent the full statutory language has a generally accepted meaning, that meaning would seem to include statutory actions. Accordingly, it is entirely appropriate to look at extrinsic evidence in order to determine what Congress meant to say. See DBB, 180 F.3d at 1282 (finding term "restraining order" as used in federal statute to be ambiguous where definition supplied by Black's Law Dictionary conflicted with meaning applied in other contexts).

The history of section 632 strongly supports the view that the phrase "all suits of a civil nature at common law or in equity" truly means all civil actions regardless of whether such actions are based on a state statute. Suits involving Federal Reserve Banks or their predecessors have long been recognized as suits "arising under" federal law by virtue of the uniquely federal status of these institutions. Long ago, in Osborn v. Bank of the United States, 9 Wheat. 738, 6 L.

12

Ed. 204 (1824), the Supreme Court held that a state law dispute involving a federally-chartered institution (specifically, the Second Bank of the United States) could be heard in federal court without running afoul of Article III because such institutions derive all of their powers from their federal charters. Relying on Osborn, the Court later expanded federal court jurisdiction to cover all actions against federally-chartered institutions. Pacific Railroad Removal Cases, 115 U.S. 1, 5 S. Ct. 1113, 29 L. Ed. 319 (1885).

The Pacific Railroad decision subjected federal courts to a flood of litigation. See Murphy v. Colonial Fed. Sav. & Loan Ass'n, 388 F.2d 609, 612 (2d Cir. 1967). In 1925, therefore, Congress responded with a statute that severely limited the jurisdiction of the federal courts over actions involving federally-incorporated institutions.[3] That statute foreclosed federal jurisdiction over actions involving a Federal Reserve Bank where there was no independent jurisdictional base. See Federal Reserve Bank of Kansas City v. Omaha Nat'l Bank, 45 F.2d 511, 513 (8th Cir. 1930).

---

[3]Act of February 13, 1925, ch. 229, § 12, 43 Stat. 941, codified at 28 U.S.C. § 1349 ("[N]o district court shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress: Provided, That this section shall not apply to any suit, action, or proceeding brought by or against a corporation incorporated by or under an Act of Congress wherein the Government of the United States is the owner of more than one-half of its capital stock.").

13

Shortly thereafter, however, Congress created two exceptions to the jurisdictional limits established by the 1925 Act, one of which was 12 U.S.C. § 632, at issue here. Section 632 was passed as part of the Glass-Stengall Banking Act of 1932, which extended the control of the federal government over the operations of the Federal Reserve Banks. Act of June 16, 1933, ch. 89, § 15, 48 Stat. 162. The actual legislative history of section 632 is not extensive. Nevertheless, a letter of recommendation from the Federal Reserve Board to the Senate Banking Committee makes unmistakably clear the purposes of section 632:

> The Federal courts formerly had jurisdiction of suits by and against Federal reserve banks because of the fact that Federal reserve banks are incorporated under an Act of Congress; but Section 12 of the Act of February 13, 1925, provides that no district court of the United States shall have jurisdiction of any action or suit by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, except corporations in which the Government of the United States is the owner of more than one-half of the capital stock.

> It is not believed that Congress had the Federal reserve banks in mind when this amendment was enacted; but its terms deprive the United States district courts of jurisdiction of all suits by or against Federal reserve banks, unless a question involving the interpretation of the Constitution of the United States or of some Federal statute is raised by the original pleadings of the plaintiff. The provisions of the Federal Reserve Act or the regulations of the Federal Reserve Board are frequently the grounds upon which Federal reserve banks defend suits brought against them; but the fact that such questions are raised in the defendant's pleadings is not a ground of jurisdiction in the United States district courts. The Federal reserve banks are thus forced to defend in the State courts suits which turn upon essentially

14

Federal questions and which result in nationally important interpretations of the Federal Reserve Act.

Unlike national banks, the Federal reserve banks cannot remove suits brought against them by persons located in other States to the United States district courts on the ground of diversity of citizenship, because the Supreme Court of the United States has held that a Federal corporation is not a citizen of any State, and there is no provision in the Federal Reserve Act similar to that in the National Bank Act providing that they shall be deemed citizens of the States in which they are located.

The Act of February 13, 1925, makes an exception in the case of corporations in which the Government of the United States is the owner of more than one-half of the capital stock; and it would seem that the exception should logically be extended to include Federal reserve banks, since they act as fiscal agents of the United States and perform certain functions of subtreasuries as well as many other important functions for the Government. Moreover, in the event of the liquidation of the Federal reserve banks, all of their surplus, which amounts to nearly twice their paid-in capital stock, would become the property of the United States.

Letter of Recomm. from the Bd. of Governors of the Fed. Res. Sys. to the Sen. Banking Comm., April 8, 1933, quoted in People ex rel. Cosentino v. Federal Reserve Bank of Chicago, 579 F. Supp. 1261, 1264-65 n.2 (N.D. Ill. 1984). As summarized in Cosentino, "[f]irst, § 632 was designed to avoid inconsistent state court interpretations of the Federal Reserve Act and accompanying regulations. Second, § 632 recognized that federal reserve banks were deemed citizens of no state and thus could not remove cases against them to federal court on diversity grounds. Third, the extension of federal jurisdiction over federal reserve banks

15

was based on a recognition of the central role the federal reserve banks played in the nation's economy and their actions as fiscal agents and sub-treasuries for the federal government. . . . In the half-century since the passage of § 632 there have been no important changes in either the language granting federal jurisdiction or in the judicial interpretation of that provision." Id. at 1265.

Based on the foregoing, it is clear that section 632 was intended not to constrict the type of civil actions involving Federal Reserve Banks that are subject to federal jurisdiction, but rather to restore and codify the earlier understanding that all actions in which a Federal Reserve Bank is a party come within the district courts' original jurisdiction.[4] There certainly is no evidence that Congress intended to treat state statutory claims any differently than claims based on a state's case law or equitable jurisprudence.[5]

---

[4]Prior to the 1925 Act, federal courts had assumed jurisdiction over actions involving Federal Reserve Banks based at least in part on a state statute. See, e.g., Federal Reserve Bank of Richmond v. Malloy, 264 U.S. 160, 161, 44 S. Ct. 296, 297, 60 L. Ed. 617 (1924); Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta, 3 F.2d 614, 617 (N.D. Ga. 1925).

[5]There may be at least one aspect of the history of section 632 that arguably can be read to support the district court's interpretation. Shortly after Congress enacted section 632, the Federal Rules of Civil Procedure were issued. The Rules eliminated the distinction between law and equity courts by creating "one form of action to be known as a civil action." Fed. R. Civ. P. 2. In 1948 Congress, as part of a wholesale revision of the Judicial Code, amended the statutes creating federal question and diversity jurisdiction to reflect this change; thus, the federal question statute (28 U.S.C. § 1331), which had referred to "all suits of a civil nature, at common law or in equity," was revised to read "all civil actions." The identical revision was made to the diversity statute (28 U.S.C. § 1332). Congress did not revise section 632, however, to eliminate the reference to suits "at common law or in equity." The fact that Congress changed the language of the leading jurisdictional statutes to remove the references to actions "at common

16

Simply put, the history of section 632 strongly suggests that Congress intended to provide Federal Reserve Banks with a federal forum for all actions by or against them, and did not intend to carve out an exception for state statutory claims. Even assuming that the principle of expressio unius est exclusio alterius -- the basis for the district court's holding -- could be applied to the ambiguous language of section 632, it would give way in the face of contrary legislative intent. See, e.g., United States v. Castro, 837 F.2d 441, 442-43 (11th Cir. 1988) ("this principle has its limits and exceptions and cannot apply when the legislative history and context are contrary to such a reading of the statute"); see also Pudenz v. Littlefuse, Inc., 177 F.3d 1204, 1209 n.5 (11th Cir. 1999) ("courts rarely rely solely on this canon of statutory construction because it is subject to so many exceptions").

Powerful policy concerns provide further support for construing the pertinent language of section 632 to encompass claims based on state statutes. The unique and vital role of the Federal Reserve Banks in the national banking system

---

law or in equity," but did not make such a change to section 632, arguably could be read as an expression of Congressional intent to preserve in section 632 some kind of distinction between claims "at common law or in equity" and other types of claims. But section 632 already used the phrase "of a civil nature" to describe the type of cases subject to its jurisdictional grant, so Congress may simply have thought that amending section 632 was unnecessary. Moreover, there is absolutely nothing that we are aware of to suggest that the failure to edit "at common law or in equity" out of section 632 reflected a Congressional determination that state statutory claims should be or remain outside the ambit of that provision.

17

justifies relieving them of the prospect of inconsistent decisions imposed by the many state courts that conceivably could exercise jurisdiction over their activities. See Federal Reserve Bank of Boston v. Commissioners of Corps. and Taxation of Massachusetts, 499 F.2d 60, 63 (1st Cir. 1974) (section 632 "reflects a congressional policy to have any litigation affecting the Federal Reserve System centered in a federal forum to promote uniformity of decision"). Excluding state statutory actions from the ambit of federal jurisdiction compromises this goal while advancing no policy purpose. As the Appellant and the amicus parties argue persuasively, the possible impact of inconsistent state interpretations of the Uniform Commercial Code (a statute that governs important aspects of the Banks' activities and has been adopted in substantially identical form by almost all states) could be especially grave. Undeniably, these policy concerns, while supporting a broad interpretation of the statute generally, are less implicated by the specific circumstances of this case, which arise out of a unique state worker's compensation statute of limited application to which other Federal Reserve Banks are not subject. Nevertheless, the prospect of Federal Reserve Banks being subject to inconsistent state-by-state interpretations of the UCC provides further support for the notion that such Banks' entitlement to a federal forum should not lightly be called into question.

The parties have not cited, and we are not aware of, any case directly addressing the specific issue posed by this appeal. Significantly, however, the federal courts which have discussed section 632 have uniformly referred to the statute as encompassing all civil actions, and no case has suggested that claims based solely on a state statute are excluded. In <u>Federal Reserve Bank of Richmond v. Kalin</u>, 77 F.2d 50, 51 (4th Cir. 1935), for example, the Fourth Circuit wrote shortly after the enactment of section 632 that Congress "in the broadest possible language gave the District Courts jurisdiction of all suits of a civil nature to which any Federal Reserve Bank might be a party, without any limitation whatever as to the amount involved." The court added that "it was doubtless the intention of Congress to grant full right of recourse to the federal courts to these institutions, which had become important agencies of the federal government in its control of banking and currency." <u>Id.</u> More recently, in <u>Gildane Building Co. v. Federal Reserve Bank of Richmond</u>, 80 F.3d 895, 898-99 (4th Cir. 1996), the Fourth Circuit found that a state law claim was properly removed under section 632 "which establishes federal subject matter jurisdiction over any civil suit in which a Federal Reserve Bank is a party." In <u>Federal Reserve Bank of Boston</u>, the First Circuit said of section 632: "Congress has made it plain by express statute that a federal reserve bank is to have unrestricted access to the district courts." 499 F.2d

19

at 63.  And in City and County of San Francisco v. Assessment Appeals Board for the City and County of San Francisco, No. 1, 122 F.3d 1274 (9th Cir. 1997), the court explained that "[s]ection 632 provides a broad grant of jurisdiction.  By enacting section 632, Congress has made it plain by express statute that a federal reserve bank is to have unrestricted access to the district courts. . . .  12 U.S.C. § 632 is written in the broadest possible language . . . ."  Id. at 1276 (citations and internal quotation marks omitted).  In that case, the Ninth Circuit found that a dispute over property tax assessments imposed on a Federal Reserve Bank by a local government came within the "strong, unequivocal language of section 632 providing a federal forum to federal reserve banks."  122 F.3d at 1276.[6]

Moreover, several federal district courts have proceeded to the merits of state statutory claims in cases where federal subject matter jurisdiction was predicated solely on section 632.  See, e.g., Magel v. Federal Reserve Bank of Philadelphia, 776 F. Supp. 200, 202 (E.D. Pa. 1991) (stating that Federal Reserve Bank properly removed state statutory claim against it pursuant to section 632);

---

[6]The San Francisco decision comes closest to addressing the novel issue before this Court.  Although not specified in the Ninth Circuit's opinion, the parties' dispute appears to have arisen out of state and/or local statutes governing property taxes.  The only possible distinction is that the actual relief sought in that lawsuit was a "writ of administrative mandate" to set aside the most recent valuation of the taxable property at issue, arguably making the action one "in equity."  Nevertheless, San Francisco provides useful guidance to this Court, and Thomas makes no attempt to distinguish its logic.

20

<u>Suburban Nat'l Bank v. Federal Reserve Bank of Chicago</u>, 727 F. Supp. 402, 402 (N.D. Ill. 1989) (observing that section 632 "confers federal jurisdiction over civil suits in which a Federal Reserve Bank is a party"); <u>United States Fidel. & Guar. Co. v. Federal Reserve Bank of New York</u>, 590 F. Supp. 486, 489 n.2 (S.D.N.Y. 1984) (same); <u>Cosentino</u>, 579 F. Supp. at 1262-63 (rejecting jurisdictional challenge based on argument that state statutory claim was not a "suit" and stressing that section 632 "applies to 'all suits of a civil nature' to which a Federal Reserve Bank is a party"); <u>Savings Bank Trust Co. v. Federal Reserve Bank of New York</u>, 577 F. Supp. 964, 965 (S.D.N.Y.) (remarking that "[t]his is a civil action in which a Federal Reserve Bank is a party and therefore jurisdiction is conferred on the district court" by section 632), <u>aff'd</u>, 738 F.2d 573, 573 (2d Cir. 1984).  Although none of these decisions squarely addressed the question of whether section 632 creates federal jurisdiction over a claim based solely upon a state statute, the fact that the issue apparently did not even arise in any of them suggests that the limitation proposed in this case does not exist.

After thoroughly reviewing the statute, its history, and the uniform weight of case precedent, we are satisfied that the district court must be reversed on this issue.  Section 632 creates federal subject matter jurisdiction over <u>all</u> civil actions

to which a Federal Reserve Bank is a party, and does <u>not</u> exclude civil actions based solely on a state statute.

B.

Citing <u>Great Lakes</u> and its predecessor, <u>Matthews v. Rogers</u>, 284 U.S. 521 (1932), the district court also found that "even if plaintiff somehow established federal question jurisdiction under section 632 in spite of its express language, this court abstains from the exercise of such jurisdiction, in consideration of comity and federalism." Dist. Ct. Op. at 8. The court explained that "federal courts have refused to exercise jurisdiction where a pure question of state law drives the case and an adequate remedy exists in state court." <u>Id.</u> at 5. The court observed that "the issues presented in this case focus solely on state law, and the Alabama legislature has provided a mechanism to determine those issues . . . ." <u>Id.</u> at 7-8.

The Federal Reserve argues that the district court had no basis to dismiss this action by relying on the abstention doctrine set forth in <u>Great Lakes</u>. It contends that <u>Great Lakes</u> is irrelevant here because the doctrine applies only to tax disputes and has been held inapplicable to Federal Reserve Banks. Moreover, asserts the Federal Reserve, abstention is proper on grounds of "comity and federalism" only if there exists an adequate, available state forum to hear the parties' state law dispute. Here, there is no such forum because section 632 permits the Federal

22

Reserve to remove to, and then litigate Thomas's state law action in, federal court (indeed, the Federal Reserve has already removed that action from state court pending resolution of this appeal). Thomas makes no argument on this issue other than to assert "[t]he District Court had the right to abstain from hearing the Appellant's petition as there was pending litigation of the state issues in the State court and adequate recourse in the State court." Appellee's Brief at 7.

In Great Lakes, the Supreme Court upheld the dismissal of a declaratory judgment action filed in federal court to challenge a state tax. The Court relied primarily on the fact that the issue involved state tax law and the state had provided a satisfactory vehicle for the taxpayers to litigate their objections. In these circumstances, reasoned the Court, considerations of comity warranted withholding federal relief. 319 U.S. at 300-01, 63 S. Ct. at 1074 (court may withhold declaratory relief "when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. . . . This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its own taxes.").[7]

---

[7]Great Lakes is not really an abstention case, but rather a case about the permissible exercise of a district court's discretion to dismiss a declaratory judgment action in accordance with 28 U.S.C. § 2201. Because the district court treated Great Lakes and section 2201 as providing separate grounds for dismissing the Federal Reserve's suit, the applicability of Great

There are abundant problems with invoking <u>Great Lakes</u> here. To begin

with, both this Court and the Supreme Court have described <u>Great Lakes</u> as limited

to a discrete set of disputes involving taxation. See <u>Colorado River Water</u>

<u>Conserv. Dist. v. United States</u>, 424 U.S. 800, 816, 96 S. Ct. 1236, 1245, 47 L. Ed.

2d 483 (1976) (<u>Great Lakes</u> authorizes abstention where "federal jurisdiction has

been invoked for the purpose of restraining . . . collection of state taxes"); <u>Appling</u>

<u>County v. Municipal Elec. Auth. of Georgia</u>, 621 F.2d 1301, 1304 (5th Cir. 1980)

(<u>Great Lakes</u> "appertains to cases in federal court involving state tax

administration").[8] We are aware of no case from this Circuit applying that decision

outside the context of a tax controversy.

There is a more fundamental flaw in the district court's holding, however.

Because section 632 entitles the Federal Reserve to a federal forum for this dispute,

and expressly permits the Federal Reserve to remove Thomas's state court lawsuit

---

<u>Lakes</u> is discussed separately here.

[8]The district court here cited the district court's opinion in the <u>Federal Reserve Bank of Boston</u> litigation for the proposition that <u>Great Lakes</u> may apply to this declaratory judgment action concerning worker's compensation benefits. Dist. Ct. Op. at 7 and n.5. <u>Federal Reserve Bank of Boston</u> was a tax case, however. More to the point, the First Circuit ultimately reversed the district court's decision to abstain, finding that in light of section 362 the Federal Reserve Bank was entitled to the same general exception to <u>Great Lakes</u> carved out for action involving the United States. 499 F.2d at 64. The Federal Reserve's argument in its brief that the First Circuit explicitly ruled <u>Great Lakes</u> inapplicable to Federal Reserve Banks overstates the holding of that case; nevertheless, it certainly is true that <u>Federal Reserve Bank of Boston</u> lends little support to Thomas's position.

24

(something it already has done), this dispute will not be heard in the Alabama state courts, there is no available state forum, and comity concerns are therefore not implicated.[9]  Indeed, the practical effect of affirming the dismissal of this action in favor of Thomas's later-filed suit -- given that the Federal Reserve is entitled to remove that suit -- is simply to allow the parties' dispute to proceed in a federal forum with Thomas as plaintiff rather than defendant.  Such a result is not only unjust to the Federal Reserve, which filed its lawsuit first, but is plainly insufficient to justify a federal court abdicating its jurisdiction.

In any event, concerns about comity are offset here by the compelling grounds for providing Federal Reserve Banks with a federal forum for all varieties of civil actions against them.  Indeed, at least one circuit court has suggested that the policy goals furthered by section 632 completely preclude district courts from abstaining on comity grounds in favor of state court proceedings.  In San Francisco, the Ninth Circuit reversed a district court's decision to remand on comity and other grounds an action against a Federal Reserve Bank.  According to the court:

> "[u]nder the principles of comity, federal courts of equity should
> exercise their discretionary power with proper consideration for the

---

[9]Although actions arising under state worker's compensation statutes are ordinarily unremovable, 28 U.S.C. § 1445(c), the removal right granted by section 632 exists "[n]otwithstanding any other provision of law . . . ."  12 U.S.C. § 632.

independence of state government in carrying out its governmental functions. Freehold Cogeneration Assocs. v. Board of Regulatory Comm'rs, 44 F.3d 1178, 1187 n. 6 (3d Cir. 1995). However, comity is a doctrine of discretionary abstention. Id. "[W]here important federal interests are at stake . . ., comity yields." United States v. Gillock, 445 U.S. 360, 373 (1980). Section 632 created just such a federal policy imperative. Because a federal reserve bank has an unfettered right under section 632 to defend in federal court, the district court lacked discretion to remand the case back to state court on the basis of comity.

122 F.3d at 1277-78 (parallel citations omitted). We find, therefore, that the

district court abused its discretion by abstaining under Great Lakes in favor of the

action filed by Thomas in state court.

C.

Finally, the Federal Reserve argues that the district court abused its

discretion by dismissing this suit on the basis of Brillhart v. Excess Insurance Co.

of America, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942) and Wilton v.

Seven Falls Co., 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995), which

confirm that a district court may exercise its discretion pursuant to 28 U.S.C. §

2201 to dismiss a declaratory judgment action in favor of a pending state court

lawsuit involving the same parties and the same issues of state law.[10] The Federal

---

[10]The Federal Reserve portrays this portion of the district court's order as based solely on Brillhart and Wilton, without making any mention of 28 U.S.C. § 2201. But Brillhart and Wilton merely confirm that a district court may exercise its discretion to dismiss a declaratory judgment action pursuant to section 2201 even in the absence of so-called "exceptional circumstances." Accordingly, the district court, although discussing Brillhart and Wilton, properly predicated this

26

Reserve asserts that Brillhart and Wilton are inapplicable because section 632's removal clause ensures that there is no, and can be no, parallel state court proceeding to hear this dispute. The Federal Reserve also contends that language in section 632 making the jurisdictional grant of that statute applicable "[n]otwithstanding any other provision of law" precluded the district court from relying on Brillhart to dismiss this action. Thomas responds simply, citing section 2201, Brillhart, and Wilton, that "[t]he District Court properly utilized its broad discretion under the Declaratory Judgment Act to refuse to hear appellant's petition." Appellee's Brief at 7.

Although the district court identified several factors used by courts in deciding whether such an exercise of discretion is appropriate, its ultimate decision turned essentially on a single fact – "this court finds dismissal of plaintiff's petition would be warranted under the [Declaratory Judgment] Act, because the pending state court action filed by defendant provides an ample alternative forum." Dist. Ct. Op. at 15. According to the court, "[r]uling on plaintiff's petition encroaches upon the Alabama legislature's declaration that all contested workers' compensation claims be heard in 'the circuit court of the county which would have jurisdiction of a civil action in tort between the parties.'" Id. at 15-16 (quoting

aspect of its decision on section 2201, and we analyze it accordingly.

27

Ala. Code § 25-5-81). Moreover, ruled the court, no federal issues are at stake here, judicial economy would be served by allowing the state court to rule on issues of state law, and "it is clear plaintiff filed this

 action in anticipation of defendant filing his worker's compensation claim in Alabama state court." Dist. Ct. Op. at 16.[11]

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton, 515 U.S. at 286, 115 S. Ct. at 2142. "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment . . . ." Id. at 288, 115 S. Ct. at 2143. Thus, it undoubtedly is true that, in ordinary circumstances, 28 U.S.C. § 2201 would give the district court the discretion to dismiss a declaratory judgment action such as this even though the action comes within its original jurisdiction.

---

[11]The district court's speculation that the Federal Reserve filed this action in anticipation of Thomas's imminent filing of a worker's compensation claim in the Alabama courts does not have a great deal of significance even if we assume it to be true. Declaratory judgment actions are routinely used by potential litigants to anticipate each others' claims.

28

Nevertheless, the same considerations that warrant reversal on the issue of

Great Lakes abstention also warrant reversal on this issue.[12]  The linchpin of the

district court's decision to dismiss the Federal Reserve's action on the basis of 28

U.S.C. § 2201 was its finding that the parties' dispute was better litigated in

Thomas's action before the Alabama state courts.  As explained above, however,

our confirmation that section 632 applies to this action effectively means that there

will be no state court action to which the federal district court could defer.  A court

may exercise its discretion to dismiss a declaratory judgment action in favor of a

pending state court proceeding that will resolve the same state law issues.  It is an

abuse of discretion, however, to dismiss a declaratory judgment action in favor of a

state court proceeding that does not exist.  See Michigan Tech Fund v. Century

Nat'l Bank of Broward, 680 F.2d 736, 742 (11th Cir. 1982) (reversing

discretionary dismissal of declaratory judgment complaint where there was "no

---

[12]The Federal Reserve's other argument against dismissal, predicated on section 632's "notwithstanding" clause, is unpersuasive.  As noted above, section 632 states that: "[n]otwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any Federal Reserve bank shall be a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits . . . ." The "notwithstanding" clause simply means that no other law shall be construed to deprive the district courts of original jurisdiction over suits involving Federal Reserve Banks.  It does not by itself mean that a court, having found or assumed such jurisdiction, is forbidden from dismissing the case pursuant to principles generally applicable to cases within the district courts' original jurisdiction.  The "notwithstanding" clause, therefore, does not in and of itself compel reversal here.

29

pending state proceeding in which the issues in this case will necessarily be resolved").

Although there is much to be said for the district court's observation that the issues of Alabama statutory law raised by this lawsuit are more efficiently and properly resolved by the Alabama courts, Congress has determined that civil actions involving a Federal Reserve Bank as a party should be heard in the federal courts if the Bank so chooses in timely fashion. We do not assume that such a choice is always appropriate; in a case that does not raise matters of federal expertise or touch on the unique role of the Federal Reserve Banks in the national banking system, a Federal Reserve Bank may well be better served by litigating its state law disputes in a state forum. Nevertheless, Congress is empowered to define the jurisdiction of the lower federal courts, and has done so in this instance by giving the Federal Reserve Banks the right to insist on a federal forum for all civil actions in which such Banks are parties. Having exercised that right in this case, the Federal Reserve is entitled to proceed with its action in federal court regardless of perceived concerns about comity or efficiency. The district court erred by dismissing this lawsuit pursuant to 28 U.S.C. § 2201.

Accordingly, the district court's order of August 31, 1999 is REVERSED, and the case is REMANDED to the district court to reinstate the Federal Reserve's action.