[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13669
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-00669-WMR

BRIAN STEIN,

Plaintiff - Appellant,

versus

TITLEMAX OF GEORGIA, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 7, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, and JILL PRYOR,
Circuit Judges.

PER CURIAM:

In this case, Brian Stein alleges that TitleMax of Georgia, Inc. ("TitleMax") violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by providing inaccurate disclosures of the terms of a car-title loan.  The district court dismissed Stein's complaint for failure to state a plausible claim to relief.  After careful review, we affirm.

## I.

On December 26, 2018, Stein borrowed $100 from TitleMax, using his car as collateral.  According to the loan agreement, TitleMax also charged Stein a "lien filing fee" of $18 to record its security interest, which would "only be charged if Pawnbroker actually registers such lien," and a "pawnshop charge" of $16.51, which was based on a percentage of the principal amount advanced.  He promised to repay the total amount of $134.51 within 30 days.

In the loan agreement, TitleMax disclosed the "total amount financed" ($118), the "finance charge" ($16.51), and the "annual percentage rate" (170.23%).  The total amount financed was itemized to show $100 as the "[a]mount given to you directly" and $18 as the "[a]mount paid to public official for Lien Filing Fee."  The agreement also advised that "[t]he truth-in-lending disclosures provided . . . assume that you will pay all amounts owing hereunder on the Maturity Date."

Five days later, Stein repaid the total amount of $134.51, including the $18 lien filing fee.  At that time, TitleMax had not recorded its lien.

2

In February 2019, Stein filed this purported class-action lawsuit alleging that TitleMax violated the TILA by failing to accurately disclose the terms of the loan and pocketing the $18 lien filing fee. Stein claimed that, because TitleMax did not register the lien, the fee should have been included as part of the finance charge. And failing to include the fee as part of the finance charge, in Stein's view, led to two inaccuracies in the disclosures: (1) TitleMax wrote that the finance charge was $16.51, when it was really $34.51; (2) TitleMax wrote that the APR was 170.23%, when it was actually more than double that rate. The complaint further alleged, without factual support, Stein's belief that discovery would reveal "thousands" of similarly situated TitleMax customers.

Based on a magistrate judge's report and recommendation, the district court granted TitleMax's motion to dismiss the complaint under Rule 12(b)(6), Fed. R. Civ. P. The court concluded that the disclosures were accurate when made and that TitleMax's subsequent failure to pay the lien filing fee did not establish a TILA violation. Stein now appeals.

## II.

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting the complaint's allegations as true and construing them in the light most

3

favorable to the plaintiff.[1]  *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 (11th Cir. 2015).  To survive a motion to dismiss, "[a] plaintiff must plausibly allege all the elements of the claim for relief.  Conclusory allegations and legal conclusions are not sufficient; the plaintiffs must state a claim to relief that is plausible on its face."  *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339–40 (11th Cir. 2017) (citation and quotation marks omitted).

When interpreting a statute, we start with "the language of the statute itself," assuming that "Congress used the words in a statute as they are commonly and ordinarily understood."  *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1239 (11th Cir. 2000).  "[I]f the statutory language is clear, no further inquiry is appropriate."  *Id.*

The TILA was enacted to promote the "informed use of credit" by "assur[ing] a meaningful disclosure of credit terms."  15 U.S.C. § 1601(a); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980).  Because the TILA is a remedial consumer-protection statute, we construe its provisions "liberally to best serve Congress' intent."  *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998).

---

[1] Stein argues that the district court applied an incorrect standard of review to the magistrate judge's report and recommendation, but any error is harmless because we review the grant of a motion to dismiss without deference to the district court.  Stein also claims that the district court improperly took judicial notice of certain facts from documents Titlemax submitted with its motion to dismiss, but he has not shown that these facts were material to the judgment and, again, any error is harmless because our review is *de novo*.  Stein agrees with the facts outlined above.

As relevant here, the TILA and its implementing regulations, *see* 12 C.F.R. Part 1026 ("Regulation Z"), mandate that creditors "clearly and conspicuously" disclose important terms of a consumer credit transaction, including the "finance charge" and the APR.  15 U.S.C. §§ 1631(a), 1632(a); 12 C.F.R. § 1026.18.  The disclosures must also accurately reflect the terms of the agreement.  12 C.F.R. § 1026.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties."); *see Smith v. Chapman*, 614 F.2d 968, 977 (5th Cir. 1080) ("A misleading disclosure is as much a violation of TILA as a failure to disclose at all.").[2] Creditors who fail to comply with these requirements are subject to civil liability. 15 U.S.C. § 1640(a).

The "finance charge" reflects "the dollar amount the credit will cost [the consumer]."  12 C.F.R. § 1026.18(d).  In disclosing the finance charge, the creditor generally must include "all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).

Certain charges need not be included in the finance charge, however, provided they are "itemized and disclosed" in accordance with Regulation Z.  15 U.S.C. § 1605(d).  Among them is the following: "Fees and charges prescribed by law

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

which actually are or *will be paid* to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction."   15 U.S.C. § 1605(d)(1) (emphasis added); 12 C.F.R. § 1026.4(e)(1) (providing that "[t]axes and fees prescribed by law that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest" may be excluded from the finance charge if itemized and disclosed).  The phrase "will be paid" plainly contemplates that a creditor can exclude from the finance charge a fee that will be paid after the consummation of the transaction.

When evaluating the adequacy and accuracy of disclosures under the TILA, our inquiry focuses on the time the transaction is consummated.  *See In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) (stating that a TILA "violation 'occurs' when the transaction is consummated"); *Nash v. First Fin. Sav. & Loan Ass'n*, 703 F.2d 233, 239 (7th Cir. 1983) (stating that the adequacy and accuracy of disclosures are measured at the time of consummation).  Therefore, it's generally not a TILA violation if "a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures," although new disclosures may be required in certain circumstances.  12 C.F.R. § 1026.17(e); *see also* 15 U.S.C. § 1634 ("If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the

6

delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.").

## III.

Here, the district court properly granted TitleMax's motion to dismiss. Accepting the complaint's allegations as true and construing them in the light most favorable to Stein, the complaint does not state a plausible TILA claim.

TitleMax's disclosures clearly, conspicuously, and accurately disclosed the terms of the loan agreement when the transaction was consummated. *See* 15 U.S.C. §§ 1631(a), 1632(a); 12 C.F.R. §§ 1026.17(c), 1026.18; *In re Smith*, 737 F.2d at 1552. In the loan agreement, Stein gave TitleMax a security interest in his car and agreed that TitleMax would record its interest with the State of Georgia, for which TitleMax charged Stein an $18 lien filing fee. That fee, which accurately reflects the amount the Georgia Department of Revenue charges to record a lien, *see Recording a Lien and Security Interest on a Title*, Ga. Dep't of Revenue, https://dor.georgia.gov/recording-lien-and-security-interest-title (last visited Feb. 27, 2020), was itemized and disclosed as a "lien filing fee."

This was permitted under the statute. Both the TILA and Regulation Z expressly permit creditors to exclude from the finance charge qualifying fees that "actually are or *will be paid* to public officials," provided the fees are "itemized and disclosed." 15 U.S.C. § 1605(d)(1) (emphasis added); 12 C.F.R. § 1026.4(e)(1). In

other words, creditors may exclude from the finance charge fees that "will be paid" after the consummation of the transaction.[3]  And Stein does not dispute that the lien filing fee was itemized and disclosed or that it was the type of fee that may be excluded under § 1605(d).  Accordingly, TitleMax was not required to include the lien filing fee in the finance charge, or to disclose the charge as an "estimate," solely by virtue of the fact that it had not recorded the lien at that time.[4]

Stein contends that the disclosures were false because TitleMax did not, in fact, ever record the lien.  But we generally do not look to events after the consummation of the transaction when evaluating the adequacy and accuracy of TILA disclosures.  *See* 15 U.S.C. § 1634 ("If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy

---

[3] Stein's attempt to read "will be paid" out of the statute is unavailing.  In support of this argument, Stein chiefly relies on the Consumer Financial Protection Bureau's staff commentary to Regulation Z, which states that "[s]ums must be actually paid to public officials to be excluded from the finance charge under section 1026.4(e)(1) and (e)(3)."  12 C.F.R. Pt. 1026, Supp. I, Part 1, cmt. 4(e) ("Certain Security Interest Charges").  But the TILA expressly permits creditors to exclude from the finance charge fees that "will be paid."  15 U.S.C. § 1605(e).  So to the extent the commentary can be construed as purporting to provide for the exclusion of fees on narrower grounds than the plain terms of the statute and regulation, we cannot defer to the staff commentary.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) ("[T]he possibility of deference [to an agency's interpretation] can arise only if a regulation is genuinely ambiguous.").

[4] This case does not have the "same facts" as *Abbey v. Columbus Dodge*, 607 F.2d 85 (5th Cir. 1979), as Stein contends.  There, a car dealership charged a consumer $37.50 in unspecified "filing fees."  *Id.* at 86.  The panel held that the failure to include these fees in the finance charge was a TILA violation because the fees did not fall within the classes of charges that may be excluded under the statute and regulations.  *Id.*  Here, however, the lien filing fee qualified for exclusion under 15 U.S.C. § 1605(d) and 12 C.F.R. § 1026.4(e)(1).

resulting therefrom does not constitute a violation of this part."); *In re Smith*, 737 F.2d at 1552 ("The violation 'occurs' when the transaction is consummated.").

To the extent TitleMax's subsequent conduct bears on the accuracy of the disclosures, the complaint's allegations do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To be sure, Stein has alleged some facts that are consistent with TitleMax's liability. Given that TitleMax did not record the lien before Stein repaid the loan, there is at least a possibility that TitleMax improperly excluded from the finance charge a fee that—despite facially appearing to qualify for exclusion under § 1605(d)—would not be paid to a public official. *See* 15 U.S.C. § 1605(d) (only certain fees "which actually are or will be paid to public officials" may be excluded). And if TitleMax improperly excluded from the finance charge a fee that should have been included, it would be liable under the TILA. *See* 15 U.S.C. § 1640.

But the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted). A claim has facial plausibility only when the court can "draw the reasonable inference that the defendant is liable for the misconduct allege." *Id.*

9

Here, we cannot conclude that Stein's complaint has nudged his claim "across the line from conceivable to plausible." *Id.* at 680 (quotation marks omitted). TitleMax's conduct does not plausibly suggest a TILA violation "because it was not only compatible with, but indeed was more likely explained by, lawful . . . behavior." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)).

Stein took out the 30-day loan on Wednesday, December 26, 2018, and repaid it five days later, on Monday, December 31, 2018. Including both the first and last days, TitleMax had, at best, two full business days and two partial business days to record the lien. While it did not do so, we cannot infer from this failure alone—during the final week of the year between Christmas Day and New Year's Day—that it would not do so in the days ahead. Beyond unsupported and conclusory allegations, the complaint did not allege that TitleMax engaged in a pattern of similar misconduct. *See id.* at 681 ("[T]he allegations are conclusory and not entitled to be assumed true."). Plus, as noted above, the $18 lien filing fee accurately reflects the amount the Georgia Department of Revenue charges to record a lien. Altogether, TitleMax's alleged conduct is not only consistent with, but more likely explained by, a simple failure to promptly record the lien before Stein repaid the loan in full. Accordingly, Stein has not plausibly alleged an entitlement to relief under the TILA.

To be clear, our conclusion that Stein did not state a TILA claim does not mean that TitleMax acted lawfully in all respects. The purpose of the TILA is to

10

provide a full disclosure of credit charges to consumers, not to comprehensively regulate the credit industry.  See 15 U.S.C. § 1601(a*); Ford Motor Credit Co.*, 444 U.S. at 559.  And as the magistrate judge noted, the TILA grants rights ancillary to, not in place of, other state-law remedies.  Stein may or may not have other claims against TitleMax under state law arising out of these same facts.[5]  We hold only that the allegations in Stein's complaint, accepted as true, do not state a plausible claim to relief under the TILA.

Finally, Stein argues that the district court should have granted his request for leave to amend.  He did not file a motion seeking leave to amend, however, and instead embedded that request in his brief in opposition to the motion to dismiss.  That is not sufficient to raise the issue under our precedent.  *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").  Moreover, Stein failed to attach a copy of his proposed amendment or to describe the substance of his proposed amendment, as required by Rule 7(b), Fed. R. Civ. P.  *See Rosenberg v. Gould*, 554 F.3d 962, 967

---

[5] For instance, Stein claims that Georgia state law does not allow Titlemax to charge a lien filing fee unless it has actually been paid.  But even assuming Titlemax improperly refused to refund the $18 fee under Georgia state law, he does not explain how state law affects his claim under the TILA, a federal statute.  Nor are we persuaded that a judgment in Titlemax's favor in this case will give creditors license to commit fraud or other wrongdoing, given the availability of these other remedies.  We also note that Stein appears to have filed a separate state-court action based on the facts alleged here.

11

(11th Cir. 2009).  Instead, he merely included a single statement requesting leave to amend "[s]hould the Court not agree with Plaintiff that dismissal is inappropriate." Under our case law, Stein's request for leave to amend was insufficient as a matter of law, and the district court did not abuse its discretion by denying it.

## IV.

TitleMax has filed a motion for sanctions against Stein and his counsel under Rule 38, Fed. R. App. P.; 28 U.S.C. § 1912; 28 U.S.C. § 1927; and this Court's inherent powers.  In TitleMax's view, Stein brought a "frivolous and wasteful appeal" based on a "manufactured attempt[] to snare TitleMax in an unwitting trap" by repaying the loan prematurely.

Rule 38 provides that "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  Fed. R. App. P. 38.  Rule 38 sanctions are appropriately imposed against appellants who raise "clearly frivolous claims in the face of established law and clear facts."  *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016).  Section 1912 provides that this Court "in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."  28 U.S.C. § 1912.  Finally, § 1927 and this Court's inherent powers permit an award of sanctions where an attorney has engaged in "unreasonable and vexatious" conduct

12

that "multiplies the proceedings." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (stating that this Court's "inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927").

Although we have ruled against Stein on his TILA claim, we cannot say that this appeal was "clearly frivolous" or "utterly devoid of merit." *Parker*, 835 F.3d at 1371. As explained above, Stein's complaint established a possibility of misconduct under the TILA, though it ultimately was not sufficient to state a plausible claim. The record also does not support a finding that Stein's counsel engaged in unreasonable and vexatious conduct. *See Amlong*, 500 F.3d at 1239. While TitleMax questions Stein and his counsel's motivations in bringing this action, Stein's conduct was permitted under the loan agreement, and we cannot, on this record, infer bad faith on their part. For these reasons, we deny TitleMax's motion for sanctions.

## V.

In sum, we affirm the district court's judgment dismissing Stein's complaint alleging violations of the TILA.

**AFFIRMED.**