FARMERS' LOAN & TRUST CO. OF NEW YORK *v.* CHICAGO & A. RY. CO.

(*Circuit Court, D. Indiana.* December 9, 1890.)

1. MORTGAGES — FORECLOSURE SALE — RIGHTS OF PURCHASER'S ASSIGNEE TO WRIT OF ASSISTANCE.
    After a sale on the foreclosure of a railroad mortgage, the court directed its receiver to turn over the possession of the road to an assignee of the purchaser at the sale; the court reserving the right to resume the possession if the assignee should thereafter refuse to pay into court any part of the purchase price. *Held,* that this order brought the assignee within equity rule 10, which provides that every person, not a party to a cause, in whose favor an order has been made, shall be enabled to enforce obedience to such order by the same process as if he were a party to the cause; and that a writ of assistance would issue in favor of such assignee against another railroad company which unlawfully refused to surrender possession of part of the road.

2. SAME — MORTGAGOR'S CONTRACT PENDENTE LITE — DISCLAIMER BY PURCHASER.
    Pending the foreclosure of a railroad mortgage, the mortgagor leased to another railroad company an equal right to the use of a designated part of the road for a period of 20 years. The foreclosure decree provided that the purchaser at the sale should be at liberty to abandon or disclaim any leasehold interest or contracts or other agreements entered into by the mortgagor after the commencement of foreclosure proceedings. *Held,* that the purchaser's right to abandon and disclaim the lease, as provided in the decree, was not affected by the receipt of the rent by the receiver during the pendency of the foreclosure proceedings, and his acquiescence in the lease, and that all right of possession in the lessee ceased on being notified of the purchaser's intention to disclaim and abandon.

3. SAME — WAIVER OF RIGHT TO DISCLAIM.
    Shortly after the foreclosure sale, the purchaser notified the lessee of its intention to disclaim the lease, and forbade the latter from using the road at the expiration of 30 days from the date of the notice. *Held,* that the receipt of the rent for these 30 days by the purchaser, which was expressly stated to be without prejudice to its right to abandon the lease, was not such a consent to the lessee's possession as to constitute it a tenant from year to year, within the meaning of Rev. St. Ind. 1881, §§ 5207, 5208, which provide that all general tenancies where premises are occupied with the consent, either express or constructive, of the landlord, shall be deemed tenancies from year to year, to be determined by three months' notice to be given the tenant before the expiration of the year.

4. FEDERAL COURTS — JURISDICTION — WRIT OF ASSISTANCE.
    Where the undisputed facts show that the purchaser, after the foreclosure sale, never waived its right to abandon and disclaim the lease, the federal court in which the mortgage was foreclosed, in the exercise of its primary jurisdiction over the matter, will issue a writ of assistance in favor of such purchaser, notwithstanding the issuance of a temporary injunction by a state court, in which the purchaser appeared, restraining it from interfering with the lessee's possession.

In Equity.

The Chicago & Erie Company is the grantee of Messrs. Coster and Thomas, who purchased the Chicago & Atlantic Railroad at the sale made on the 13th day of August last.   The sale was made upon the decree of this court in this cause, foreclosing two mortgages, dated, respectively, June 13, 1881, and September 15, 1883.   The decree was predicated upon two bills,—the supplemental and amended bill, filed September 24, 1886, by the original complainant, the Farmers' Loan & Trust Company, which was a trustee in each of the mortgages, and a cross-bill filed July 19, 1887, by George J. Bippus, co-trustee of that company in the second mortgage.   On the 1st of September last, in pursuance of an order of the court entered that day, the receiver surrendered possession of the property to the Chicago & Atlantic Company, except that portion of the road between Hammond and Laketon junction, Ind., of which the Wabash Company was in *quasi* possession jointly with the receiver, and of that portion the receiver surrendered the possession which he had held.   The petition is for the aid of the court to exclude the Wabash Company from that part of the road.

In its answer to the petition the Wabash Company sets up a contract made June 1, 1887, between the Chicago & Atlantic Railroad Company and O. D. Ashley and A. A. Talmage, as managing agents of the purchasing committee of the Wabash, St. Louis & Pacific Railway Company, whereby—

"In consideration of certain payments, covenants, and agreements specified, the Chicago & Atlantic Company leased and demised to said Ashley and Talmage, their successors and assigns, for a period of twenty years, an equal right for using and enjoying, jointly with said railway company, the road, road-bed, track, side tracks, switches, bridges, outbuildings, tanks, coal-chutes, cattle-cars, and all other fixtures appertaining to the road of the Chicago & Atlantic Company between Laketon-junction, aforesaid, in Wabash county, Indiana, and point above the tracks of the Chicago & Atlantic Railway Company connected with the Chicago & Western Indiana Railway Company at or near Hammond:"

—And avers that afterwards, by virtue of certain transfers and assignments made with the consent of the Chicago & Atlantic Company, the Wabash Company, as the successor of the Wabash, St. Louis & Pacific and the Wabash & Western, became entitled to the rights of Ashley and Talmage under that contract and lease, and, as tenant, paid to the Chicago & Atlantic Company, from time to time, all rentals accruing, as they became due; that on or about the 20th day of May, 1889, this court, at the instance and request of the mortgagees and bondholders, appointed Volney T. Malott receiver of the railroad and property of the Chicago & Atlantic Company, and that thereupon the receiver and the Wabash Company entered upon the joint use and occupation of the Chicago & Atlantic road between Laketon junction and Hammond; the receiver holding under his appointment, and the said Wabash Railroad Company holding and occupying, with the knowledge and consent of the mortgages and bondholders and receiver, under the aforesaid contract of lease; that the receiver, as the agent and representative of the mort-

gagees and bondholders, ratified and confirmed the said lease, and all the terms thereof, excepting as to its duration; that ever since the appointment of the receiver the Wabash Company has continued to pay the rents to him, as the agent and representative of the mortgagees and bondholders, as the same became due, and that, by reason of the premises, a general tenancy was created between said mortgagees and bondholders, of the one part, and the Wabash Railroad Company, of the other part, and that, as such general tenant, it has ever since, with the knowledge and consent of said mortgagees and bondholders, been in possession of said railroad and appurtenances. It is further averred that the sale was made on the 13th of August, 1890, to Coster and Thomas, who conveyed to the Chicago & Erie Company; that the receiver, in pursuance of the order of the court, delivered possession to that company on the 1st of September; that thereupon that company entered upon the joint use of the property with the Wabash Company between the stations aforesaid; that thereafter the Chicago & Erie Company, by the schedule rules which it adopted and put in force on said railroad, continued to recognize the Wabash Company as having equal rights with the Chicago & Erie Company to pass its trains over said railroad, and that the Chicago & Erie Company duly furnished the Wabash Company with such coal, water, and telegraph facilities as were necessary to enable it to run its trains, and also required the Wabash Company to report and register with the agents of the Chicago & Erie Company each and every train of the Wabash Company passing over the road, as required by the contract of June 1, 1887; in consequence whereof the Wabash Company became a general tenant by parol of the Chicago & Erie Company on the terms expressed in said contract, and became entitled to continue the use and enjoyment of said railroad on the terms aforesaid until such tenancy should be lawfully terminated; that it paid to that company the rental due under said lease for the month of September, and that, in recognition of the rights of the Wabash Company to the joint use of said tracks as a tenant of the petitioner, the petitioner has, since it came into possession, daily issued orders for the running of the Wabash trains, orders for the fuel required, and has delivered the same to the Wabash Company; that the occupancy of the property by the Wabash Company has been by the consent and with the approval of the petitioner, and that, relying upon its rights as a general tenant of said mortgagees and bondholders, it expended large sums of money in increasing and building up a profitable business for said railroad, and is now transporting over the same daily large quantities of freight and a large number of passengers, to-wit, 200 cars of freight and 300 passengers per day. It is further shown that the Wabash Company, after being notified that it should cease to use the Chicago & Atlantic road after September 30th, applied to the Wabash circuit court (a state tribunal) for a restraining order against the Chicago & Atlantic Company; that the Chicago & Erie Company appeared and resisted the application, but that a temporary injunction was granted as prayed, and that the complaint upon which the application to the state court

was made, among other things, contained averments substantially the same as those of the answer filed herein. The answer contains other averments which need not be stated because not material to the questions raised and argued at the hearing. The evidence, outside the records and files of the cause, showed that, after the surrender of possession by the receiver to the Chicago & Erie Company, the trains of the Wabash Company were permitted to run according to the schedule (No. 32) which took effect July 13, 1890, and the occupation and use of that part of the line in question continued in conformity with the terms of the contract of June 1, 1887, except that, commencing with the telegram of September 1st, there was the following correspondence between officers of the two companies:

"SEPT. 1, 1890.

"*To C. M. Hays, General Manager Wabash Ry., St. Louis, Mo.:* According to decree in suit Farmers' Loan and Trust Company against Chicago & Atlantic Company, the Chicago & Erie Co. abandons contract between Ashley and Talmage and Atlantic, dated June 1st, eighty-seven.

"OTTO GRESHAM.

"CHICAGO, Sept. 1, 1890.

"*The Wabash Railroad Company, Mr. Chas. M. Hays, General Manager, St. Louis, Mo.*—DEAR SIR: The Chicago & Erie Railroad Company, having, this first day of September, 1890, by order of the proper courts, been placed in possession of the railroad property of the former Chicago & Atlantic Railway, in accordance with the terms of the decree of foreclosure and sale entered in the suit of the Farmers' Loan & Trust Company against the Chicago & Atlantic Railway Company, in the United States circuit court for the northern district of Ohio, western division, the district of Indiana, and the northern district of Illinois, hereby gives notice, in addition to the notice given by the purchasers to the master commissioner at said sale, to the Wabash Railroad Company of its abandonment and disclaimer of a certain agreement and contract entered into the first day of June, 1887, by and between E. D. Ashley and A. A. Talmage, agents of the purchasing committee of the Wabash, St. Louis & Pacific Railway Company and the Chicago & Atlantic Railway Company.    THE CHICAGO & ERIE RAILROAD COMPANY.

"By OTTO GRESHAM, Atty.

"THE WABASH RAILROAD COMPANY. GENERAL MANAGER'S OFFICE. CHAS. M. HAYS, GENERAL MANAGER.

"(ON ROAD,) Sept. 2-90.

"*Mr. Otto Gresham, Gen. Atty. C. & Erie Ry., Chicago, Ills.*—DEAR SIR: I have your message of the 1st inst., advising that, according to decree in the suit of Farmers' Loan & Trust Company vs. Chicago & Atlantic Ry. Co., the Chicago & Erie Ry. Co. abandons the contract between Messrs. Ashley and Talmage and the Chicago & Atlantic Ry. Co., dated June 1st, 1887. I presume it is your intention that we shall understand from this notice that, while you do not recognize the existing contract as binding upon your company, we are to continue under the terms of same until advised by your company of your desire to modify the present arrangement, or terminate the use of your line by our company. Please advise if this understanding is correct.

"Yours, truly,    CHAS. M. HAYS, General Manager.

"(ON ROAD,) Sept. 5, 1890.

"*Mr. S. M. Felton, Vice-President Chicago & Erie Ry. Co., New York.*—DEAR SIR: Notice has reached me, while out on the line of road, from Mr.

Otto Gresham, attorney for the C. & E. Ry., under date of September 1st, advising the Wabash R. R. Co., for the Chicago & Erie Ry. Co., of its 'abandonment and disclaimer of a certain agreement and contract entered into the first day of June, 1887, by and between C. D. Ashley and A. A. Talmage, agents of the purchasing committee of the W. St. L. & P. Ry., and the Chicago & Atlantic Ry.,' the receipt of which has been acknowledged. This notice was not entirely unexpected, as I have been informed through other sources that the arrangement referred to was not satisfactory to your company in every respect. Will you please advise me, as soon as convenient, if it is now your desire to make some modification or change in the terms of the contract under which we have been operating our trains over your line between Laketon junction and Hammond, Indiana, or if it is your intention to terminate absolutely all further relations with this company. If the former, I shall be glad to meet you at any time or place that may best suit your convenience, and negotiate for the continued use of your line by this company, upon such basis as we may be able to agree. If it is not your desire to do this. upon reasonable notice from you to that effect, we shall govern ourselves accordingly. Please answer.

"Yours, truly,                    CHAS. M. HAYS, General Manager.

"NEW YORK, September 16, 1890.

"*Mr. Chas. M. Hays, General Manager Wabash Railroad Company, St. Louis, Mo.*—DEAR SIR: I am in receipt of your favor dated 'St. Louis, (on road,) Sept. 5, 1890.' In reply I beg to say that the Chicago & Erie Company desires that any use of its track by the Wabash Railroad Company shall absolutely cease. In order that you may govern yourselves accordingly, I inclose a formal notice fixing a time when use shall cease.

"Respectfully yours,            S. M. FELTON, Jr., Vice-President.

"NEW YORK, September 16, 1890.

"*The Wabash Railroad Company, Mr. Chas. M. Hays, General Manager, St. Louis, Mo.*—DEAR SIR: Referring to the notice sent to the Wabash Railroad Company on behalf of the Chicago & Erie Railroad Company by Mr. Otto Gresham, attorney, dated the first instant, you are hereby notified that on and after the hour of midnight on the 30th day of September, instant, the Wabash Railroad Company will not be permitted to run any cars or locomotives upon or over the track of the Chicago & Erie Railroad.

" Yours, truly,                    J. G. McCULLOUGH, President.

"CHICAGO & ERIE RAILROAD COMPANY. OFFICE OF THE GENERAL SUPERINTENDENT.

"CHICAGO, ILLS., Sept. 30, 1890.

"*The Wabash Railroad Company:* Notice having been given by the purchasers at Indianapolis, Indiana, August 12th, 1890, at the foreclosure sale of railroad and property of the Chicago & Atlantic Railway Company, of the abandonment and disclaimer of a certain contract or agreement entered into on the 1st day of June, 1887, by and between the Chicago & Atlantic Railway Company and O. D. Ashley and A. A. Talmage, managing agents for the purchasing committee of the Wabash, St. Louis & Pacific Railway Company, and notice also having been given by the Chicago & Erie Railroad Company on the 1st day of September, 1890, of the abandonment and disclaimer of said contract between the Chicago & Atlantic Railway Company and O. D. Ashley and A. A. Talmage, aforesaid, the Chicago & Erie Railroad Company now demand that the Wabash Railroad Company, by 12 o'clock midnight of this date, discontinue the use of the track of the Chicago & Erie between

Chicago and Laketon, or any other points, and after 12 o'clock to-night the Chicago & Erie will not expect the Wabash Railroad Company under any circumstances to send any trains over the track aforesaid.

> "THE CHICAGO & ERIE RAILROAD COMPANY.
> "By A. M. TUCKER, Gen'l Sup't."

The receipt, which is undated, given by the Chicago & Erie Company to the Wabash Company for rentals for the month of September, is indorsed—

"Without prejudice to the rights of the company under the notice given to the master commissioner by the purchasers of the property and franchises of the Chicago & Atlantic Railway Company, and under the notice given by Otto Gresham, attorney, etc., on Sept. 1st, 1890, from J. G. McCullough, president, etc., to the Wabash Company, and without in any wise qualifying or modifying the said notices, or the rights claimed thereunder, this voucher is signed and payment accepted."

The decree of foreclosure contains the following clause:

"It is further ordered that the purchaser or purchasers at said sale, and his, its, or their assigns, at any time before the delivery of the deed by the master commissioner, shall be at liberty to abandon or disclaim any of the said leasehold estates or interests, or contracts or other agreements, or rights, privileges, easements, or other property, by giving notice in writing of such abandonment or disclaimer to the said master commissioner, who shall annex the same to, and file the same with, his final report."

*B. H. Bristow, C. W. Fairbanks,* and *Otto Gresham,* for petitioners.

*W. H. Blodgett, Henry Crawford,* and *C. B. & W. V. Stuart,* for respondent.

WOODS, J., *(after stating the facts.)* The objection is made at the threshold that the petitioner cannot have the assistance of the court in the way asked to obtain possession, because it was not the purchaser, but comes as the grantee of the purchasers at the master-commissioner's sale. The authorities cited in support of this objection do not fully support it. In *Van Hook* v. *Throckmorton,* 8 Paige, 33, the court says:

"There is no settled practice of this court entitling a subsequent purchaser from a purchaser at a master's sale as a matter of right to the assistance of the court to obtain possession of the premises which his grantor had purchased under the decree."

And in *People* v. *Grant,* 45 Cal. 97, and *Stanley* v. *Sullivan,* 71 Wis. 585, 37 N. W. Rep. 801, the question was one of statutory construction, and the decisions have no general application. But, whatever the general rule in that respect is, it is not controlling in the present case; because, by the order of September 1st, this court recognized, and, in effect, declared, a substitution of the Chicago & Erie Company in the place of the purchasers at the sale, in respect both to rights and to duties and liabilities. That order, which was made with the consent of parties, besides directing the receiver to deliver possession "to the said Chicago & Erie Railroad Company, as the grantee and assignee of said purchasers at the commissioner's sale had herein," contains this clause:

"And the court now reserves the right to resume the possession of said railroad and other property in case the said Chicago & Erie Railroad Company shall hereafter fail or refuse, upon the order of the court, to pay into this court any money allowances for costs, expenses of the trust, or for claims against said receiver; and for that purpose the court retains jurisdiction of the said railroad and other property."

If this did not make the Chicago & Erie Company a party to the cause within the meaning of equity rule 9, which authorizes the issue of the writ of assistance for the use of a party, it certainly entitles it to the benefit of rule 10, whereby it is declared that—

"Every person not being a party in any cause, who has obtained an order, or in whose favor an order shall have been made, shall be enabled to enforce obedience to such order by the same process as if he were a party to the cause; and every person not being a party in any cause, against whom obedience to any order of the court may be enforced, shall be liable to the same process for enforcing obedience to such order as if he were a party to the cause."

The petitioner is therefore entitled to the writ, if the facts justify the granting of it.

The answer of the respondent has in it the proposition that, by reason of the conduct of the receiver "as agent and representative of the mortgagees and bondholders," his receipt of rent from the Wabash Company, and other facts alleged, "a general tenancy was created between the mortgagees and bondholders, of the one part, and the Wabash Railroad Company, of the other part." In respect to this it is enough to say that the receiver did not make, or attempt to make, any arrangement which should extend beyond the term of the receivership. Without the consent of the court, I suppose, he could not have done so. The fact is that, during the possession of the receiver, he complied with the terms of the contract of June 1, 1887, in so far as they were obligatory upon the Chicago & Atlantic Company, so that there was, by reason of the receivership, no breach of the contract in that behalf; and if, instead of a sale, the suit had ended in the restoration of control to the Chicago & Atlantic Company, the relation between the two companies in respect to that contract would have been the same—the contract would have been just as binding upon them—as if there had been no receivership; and so, in the language of the answer, it remained true, until the receiver turned the property over to the petitioner that "the receiver and the Wabash Company entered upon the joint use and occupation of the railroad;   *   *   *   the receiver holding under his appointment, as aforesaid, and the Wabash Railroad Company holding and occupying *   *   *   under the aforesaid contract of lease." That contract, whether it created a tenancy or an easement, having been made pending the suit, the rights of the Wabash Company under it were necessarily held subject to the decree, as much as if that company had been a party to the action. The suggestion at the argument that the contract was made before the filing of the cross-bill of Bippus is immaterial, because the bill of the Farmers' Loan & Trust Company sought a foreclosure of both mortgages, and consequently there was when that contract was made, in respect to both mortgages, a *lis pendens* as complete, I suppose, as if the

cross-bill had also been pending. Besides, the decree upon the first mortgage alone is a complete foreclosure of the rights of parties claiming under contracts made with the mortgagor after the commencement of the suit to foreclose that mortgage. When, therefore, the purchasers at the sale, in accordance with the terms of the decree in that respect, gave notice to the master commissioner of their election "to abandon and disclaim" the contract of June 1, 1887, with Ashley and Talmage, and all supplemental agreements, the result was that, immediately upon the surrender of possession by the receiver, all right of possession in the Wabash Company under that contract ceased; and, if that company has any ground for rightful resistance to the petitioner's claim for full and exclusive possession, it must be because, by conduct or by contract, the petitioner has conferred that right since it took possession at the hand of the receiver.

In respect to this point the attorneys for the Wabash Company, in a brief filed since the argument, say:

"On the foregoing facts, the first question presented is whether this court ought to attempt, in this proceeding, to determine the merits of the controversy now pending and being prosecuted in good faith between the same parties in the state court. If the Chicago & Erie Company has done nothing which entitles the Wabash Company to the injunction which it prayed for and obtained in the state court, then the Chicago & Erie Company can make its defense there. Both parties being citizens of the state of Indiana, the state court was the only tribunal to which the Wabash Company could appeal for the protection of its rights under any express or implied contract which had sprung up between September 1st and September 22d between the parties, which was after the Chicago & Erie Company had taken possession or assumed control; and we submit that no summary process from this court ought to be employed to cut down any such rights, in case they do exist. And especially is that true when such rights are asserted in good faith, and supported by evidence strong enough to induce the state court, upon a full hearing, to grant the relief prayed for. The cases cited and relied upon by petitioner are those in which the parties in possession set up no claim of right through anything arising subsequent to the sale. But here that claim is made, and it is made in good faith, and upon evidence sufficient to cause the state court to issue an injunction, and our contention is that the question whether or not that injunction was rightfully or wrongfully issued is an issue which ought to be left to the tribunal in which it is pending. We rely on the rule as stated in *Barton* v. *Beatty*, 28 N. J. Eq. 412, in which it was said: 'The exercise of the power of putting a purchaser in possession of land sold under the decree of this court rests in the discretion of the court. It will never be exercised in a case of doubt, nor, under color of its exercise, will a question of legal title be tried or decided.' *Schenck* v. *Conover*, 13 N. J. Eq. 227; *Vanmeter* v. *Borden*, 25 N. J. Eq. 414. The court will not in this summary way settle contested legal rights. *Thomas* v. *De Baum*, 14 N. J. Eq. 41. A writ of assistance is awarded in execution of a final decree. Having decreed a sale and conveyance of land, it is necessary, in order to give the purchaser the full benefit of his purchase, to put him in possession. This the court will do as a full enforcement of its judgment, and as incident to the relief given by its decree. But if, subsequent to the sale, the purchaser confers new rights on the person in possession, or his conduct leaves it doubtful whether he has not given the person in possession a right to hold the land, such fact takes away the power of this court to deliver possession. In such a case the ques-

tion would be, has the person in possession a right to hold the land **by matter** arising subsequent to the sale? and not, is a writ of assistance necessary to the complete enforcement of the decree? That question must be tried in another tribunal. In this case the person in possession puts in evidence certain facts tending to show the creation of a tenancy at will subsequent to the sale. The petitioner attempts to meet the case thus made by showing that no tenancy of any kind was created. Perhaps the evidence of each, standing alone, is sufficient to make out a *prima facie* case. It is obvious at a glance that the question thus raised is one not proper to be tried in this court. The application must therefore be dismissed. To the same effect, see *City of San Jose* v. *Fulton*, 45 Cal. 316."

It is evident that in the case referred to there was conflict in the evidence, and that on each side it was "sufficient to make out a *prima facie* case." There is no essential conflict of that kind here. The facts are as certain as if embodied in a special verdict or finding, and it remains only to deduce the proper legal conclusion,—a duty which would belong to the court even if the question were being tried in another tribunal with the aid of a jury; and in respect to that conclusion it seems to me that there is little or no room for doubt what it ought to be. There is nothing in the evidence adduced here that shows the ground upon which the Wabash circuit court granted its restraining order, nor that that court passed upon the exact question presented here; and, if it did, it would nevertheless be the duty of this court to act upon the matter according to its own judgment, because the primary jurisdiction is here, incident to the procedure of foreclosure and sale in the principal case, and upon the exercise of that jurisdiction the petitioner has the right to insist, notwithstanding the action had in the state court, and notwithstanding its appearance in that court, to resist that action. The powers and remedies of this court would be lame and inefficient indeed if they did not extend to situations like this, and if their exercise could be intercepted or cut off by applications to other courts.

The Indiana statute (Revision 1881, §§ 5207, 5208) provides that "estates at will may be determined by one month's notice," but that "a tenancy at will cannot arise or be created without an express contract; and all general tenancies in which the premises are occupied by the consent, either express or constructive, of the landlord, shall be deemed tenancies from year to year," which are determinable by "three months' notice given to the tenant prior to the expiration of the year." On the assumption that the occupation and use of the road by the Wabash Company in the manner shown constitutes a tenancy and estate in the sense of these statutes, it is now insisted that the Wabash Company holds as a general tenant of the Chicago & Erie Company. Whether the contract with Ashley and Talmage constituted, and whether any occupation and use of the road in accordance with the terms of that contract could constitute, a tenancy, seems to me quite doubtful. The right conferred thereby upon the "lessee," so-called, was simply to run its trains in charge of its own employes over the road of the other party, (the road itself being in the charge of the employes of the owner,) which by the contract was bound to furnish,

and did furnish, to the Wabash Company the requisite fuel, water; use of side tracks, and other facilities, including telegraph service, for the moving of its trains. A guest or boarder occupying a room for the time being, it may be exclusively, does not become a tenant in any proper sense of the word; and the right conferred by the contract with Ashley and Talmage seems to me to be rather in the nature of an easement; and the position of the Wabash Company since the Chicago & Erie Company took possession has been perhaps more like that of a licensee. But it is not necessary to define exactly the relation of the parties under that contract. It was treated in argument as a tenancy, and let it be so regarded. Whatever it was, by force of the decree of foreclosure and of the notice of "abandonment and disclaimer," given by the purchasers to the master commissioner on the day of sale, the rights of the respondent were terminated; and, aside from considerations of public policy against any sudden interruption of transportation and travel, the Chicago & Erie Company, upon taking possession, might have turned its switches, and refused to permit another locomotive or car of the Wabash Company to come upon its tracks; but it was not bound, in order to save its rights, to take so peremptory a course. It was enough that it sent immediate notice, both by telegraph and letter, to the Wabash Company of its purpose to abide by the disclaimer which Coster and Thomas had declared, and that in the subsequent correspondence with the officers of the Wabash Company this position was consistently maintained, and timely notice given that the Wabash Company at a time stated should cease entirely the use of the Chicago & Atlantic road. There was at no time cause for, nor was there in fact, on the part of the Wabash Company, any misunderstanding of the attitude of the Chicago & Erie Company; and if, under the circumstances, new rights have arisen in the nature of a general tenancy, it is because the law, from the mere fact of the continued joint use of the road conformably to the terms of the contract under which that use had begun, compels the inference of an intention contrary not only to the understanding of both parties, but to the expressed intention of the party against whose interests the inference is asserted. No such legal inference is necessary, and to say that there can be in this case an inference of fact, or of mixed law and fact, to the effect that a new tenancy or contract of any kind was intended to be created, instead of being a fair or reasonable deduction from it, would be a distortion of the evidence.

If there was not a strict compliance with the rule that there should be a formal demand for compliance with the order or decree of the court before applying for a writ of assistance, the respondent may be said, upon the facts shown, to have waived the objection. The prayer of the petition is therefore granted, and unless within a reasonable time (to be fixed on motion) the Wabash Company shall voluntarily withdraw its locomotives and cars, and cease to use the petitioner's road, the writ of assistance will issue, and the respondent will be enjoined, as prayed.