In re EMPLOYMENT DISCRIMINA-
TION LITIGATION AGAINST THE
STATE OF ALABAMA, et al.

Eugene Crum, Jr., et al., Plaintiffs,

v.

State of Alabama, et al., Defendants.

United States of America, Plaintiff,

v.

Thomas Flowers, et al., Defendants,

Alabama State Conference of NAACP
Branches, Amicus Curiae.

Nos. CIV.A. 94–T–356–N,
CIV.A. 68–T–2709–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 28, 2003.

Joseph Hiram Calvin, III, Roderick Twain Cooks, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for In re Employment Discrimination Litigation Against the State of Alabama, et al.

Thomas T. Gallion, III, Haskell, Slaughter, Young & Gallion, LLC, Montgomery, AL, Robert F. Childs, Jr., Ann K. Wiggins, Abigail P. van Alstyne, Robert L. Wiggins, Jr., Russell W. Adams, Amelia Haines Griffith, Rocco Calamusa, Jr., Peter John Tepley, Haskell, Slaughter, Young & Rediker, LLC, Beverly P. Baker, Miller, Hamilton, Snider & Odom, LLC, Birmingham, AL, Byron R. Perkins, Gregory O. Wiggins, for Eugene Crum, Jr., individually and on behalf of a class of similarly situated individuals, Robert L. Smith, Ellen Tolbert, Geneice Smith, Lynn Carter, Yvonne C. Jennings, plaintiffs.

Frank Decalve Marsh, Assistant General Counsel, State of Alabama, Department of Industrial Relations, Montgomery, AL, Margaret L. Fleming, John J. Park, Jr., William H. Pryor, Jr., Attorney General, Office of the Attorney General, Alabama State House, Montgomery, AL, Willie J. Huntley, Jr., The Huntley Firm PC, Mobile, AL, Robert J. (BJ) Russell, Department of Agriculture & Industries, Montgomery, AL, Andrew P. Campbell, David M. Loper, Amy L. Stuedeman, Cinda R. York, Wendy T. Tunstill, Campbell, Waller & Loper, LLC, Birmingham, AL, Andrew W. Redd, Alabama Department of Corrections, Legal Division, Montgomery, AL, David R. Boyd, Dorman Walker, Balch & Bingham, Jim R. Ippolito, Jr., Alabama Department of Transportation, Legal Division, Michael R. White, State Department of Education, Office of General Counsel, Reginald L. Sorrells, Alabama State Department of Education, Montgomery, AL, Warren Bricken Lightfoot, Jr., David M. Smith, A. Michelle Clemon, Maynard, Cooper & Gale, P.C., Joseph Vincent Musso, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Alice Ann Byrne, State Personnel Department, Edward A. Hosp, Maynard, Cooper & Gale, P.C., Henry Clay Barnett, Jr., Christopher W. Weller, Constance S. Barker, Capell Howard PC, Montgomery, for State of Alabama, State of Alabama Department of Education, Alabama Department of Corrections, Morris L. Thigpen, in his individual capacity, State of Alabama Personnel Board and Department, Don Siegelman, James K. Lyons, Director of Alabama State Docks, Riley Boykin Smith, Commissioner Department of Conservation and Natural Resources, James Hayes, Jr., Director of Alabama Development Office, defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

These causes are before the court on the question of whether the plaintiffs in *Crum v. Alabama*, civil action no. 94–T–356–N, who are African–Americans claiming that they have suffered employment discrimination at the hands of the defendants (who are the State of Alabama, its agencies, departments, subdivisions, and individual and official agents) may pursue sanctions for civil contempt. As grounds for contempt, the *Crum* plaintiffs allege that the *Crum* defendants are in violation of orders entered by this court in *United States v. Flowers*, civil action no. 68–T–2709, in which the United States brought suit to vindicate the state employment rights of Alabama's African–American citizens. *See generally United States v. Frazer*, 317 F.Supp. 1079 (M.D.Ala.1970) (Johnson, J.). (Because this case was previously styled *United States v. Frazer* and is

still usually referred to as *Frazer,* the court will continue to refer to it as *Frazer.*)

By orders entered in both *Crum* and *Frazer* on June 19, 2001, the court held that the *Crum* plaintiffs could not so proceed, and stated that an opinion would follow.[1] Before the opinion could be issued,[2] the *Crum* plaintiffs moved the court to reconsider its decision. The parties in both cases have now extensively briefed the original question of whether the *Crum* plaintiffs may proceed against the *Crum* defendants for contempt based on *Frazer* orders as well as the grounds for reconsidering the court's ruling. For the reasons that follow, the court remains convinced that the *Crum* plaintiffs may not proceed against the *Crum* defendants for civil contempt, and, accordingly, the motion to reconsider will be denied. Moreover, in light of the motion for reconsideration, the court will not issue the opinion it originally indicated would be forthcoming; the instant order suffices to explain the court's reasoning for its initial decision not to permit the contempt proceedings to go forward in *Crum.*

## I. BACKGROUND

A recent decision of the Eleventh Circuit Court of Appeals summarizes the background of the *Crum* case. *In re Employment Discrimination Against the State of Alabama,* 198 F.3d 1305, 1308–09 (11th Cir. 1999). The material background facts are as follows: By order entered March 24, 1994, the court consolidated several race-discrimination cases brought by African–American plaintiffs against the State of Alabama and several of its boards, departments, and agencies; the *Crum* plaintiffs also sued the Governor of Alabama and other state officials in their individual and official capacities.[3] Some of the cases were class actions in which the plaintiffs sought relief on behalf of themselves and all other persons similarly situated who were or are employed, or who may be employed in the future by the defendants.

The *Crum* plaintiffs claim, in part, that they suffer discrimination in layoffs, recalls from layoffs, terminations, discipline, hiring, rehiring, evaluations, compensation, transfers, job-duty assignments, recruitment, screening, selection procedures, denial of promotions, demotions, rollbacks, sick leave, subjective decision-making practices, and other terms and conditions of employment that have resulted in disparate impact and treatment of the *Crum* plaintiffs and their putative class. As relief, the *Crum* plaintiffs seek declaratory, injunctive, and compensatory relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the Civil Rights Act of 1866, as amended, 42 U.S.C.A. § 1981; and the fourteenth amendment as enforced through 42 U.S.C.A. § 1983.

The claims in the *Crum* litigation have substantial commonality with issues and claims already litigated and decided in *Frazer,* a lawsuit brought by the United States, as stated, to redress systemic and pervasive racially discriminatory employment practices by the State of Alabama and many of its boards, agencies, departments, and officials. *Frazer,* 317 F.Supp. at 1081. In *Frazer,* after a trial, the court found in favor of the United States and entered relief permanently enjoining the defendants from "engaging in any employment practices, including recruitment, examination, appointment, training, promotion, retention, or any other personnel action, for the purpose of or with the effect of discriminating against any employee, or actual or potential applicant for employment, on the ground of race or color." *Id.* at 1090; *see also NAACP v. Allen,* 340 F.Supp. 703 (M.D.Ala.1972) (Johnson, J.). Many of the *Crum* defendants are subject to the relief entered in *Frazer,* enjoining them from engaging in many of the practices alleged by the *Crum* plaintiffs.

On September 17, 1997, after briefing and oral argument, the court entered an order consolidating the *Crum* litigation with

---

1. *Crum* Doc. no. 442; *Frazer* Doc. no. 593.

2. Indeed, in light of the motion for reconsideration, the court will not issue the opinion it originally indicated would be forthcoming. The instant order suffices to explain the court's rea-

soning for its initial decision not to permit the contempt proceedings to go forward.

3. *Crum* Doc. no. 1.

the *Frazer* litigation "to the extent that there are issues common to both." [4] Because the proper procedure for seeking to enforce injunctive relief is through contempt proceedings, *Florida Ass'n for Retarded Citizens v. Bush*, 246 F.3d 1296, 1298 (11th Cir.2001); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir.2000), the court dismissed all *Frazer* claims without prejudice to the rights of appropriate persons or entities to file motions for contempt.[5] The *Crum* plaintiffs moved the court to require the *Crum* defendants to show cause why they should not be held in contempt of court based on the relief entered in *Frazer*.[6] The court entered an order so requiring; the court also invited the United States as the original *Frazer* plaintiff to submit its views on whether the *Crum* plaintiffs could seek contempt sanctions based on *Frazer* orders.[7]

## II. DISCUSSION

The *Crum* plaintiffs contend that Federal Rule of Civil Procedure 71 authorizes them to seek contempt for alleged violations of *Frazer* orders, and they claim that they have standing to pursue such relief. The *Crum* defendants and the United States argue to the contrary. In part, the *Crum* defendants assert that Rule 71 does not provide an avenue for the *Crum* plaintiffs to seek relief under *Frazer* because persons may never seek to enforce decrees in proceedings to which they are not a party. This is, of course, a threshold question. As the court explains below, the *Crum* defendants are mistaken.

■ The position urged by the *Crum* defendants is not supported by law apposite to the enforcement of injunctions under Rule 71. The cases upon which the defendants rely, *see, e.g.*, *Tucker v. Troy State University*, 2000 WL 639342 (M.D.Ala.2000); *Salter v. Douglas MacArthur State Technical College*, 929 F.Supp. 1470 (M.D.Ala.1996); *Sims v. Montgomery County Comm'n*, 873 F.Supp. 585 (M.D.Ala.1994), are of limited relevance to resolving the instant question and are not

controlling. These cases all held that a nonparty did not have standing to seek enforcement of consent decrees to which he or she was not a party. However, none of these cases addresses Rule 71, and all of them draw on law from the Sixth Circuit Court of Appeals, *e.g.*, *Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir.1994); *Jansen v. City of Cincinnati*, 977 F.2d 238 (6th Cir.1992) and Supreme Court precedent, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975), that did not apply or interpret Rule 71. Other circuits, including the Eleventh Circuit Court of Appeals, have clearly held or implied that the Supreme Court's holding in *Blue Chip Stamps* should not be read broadly to prohibit enforcement of court orders by non-parties under Rule 71. *Barfus v. City of Miami*, 936 F.2d 1182, 1187 n. 18 (11th Cir. 1991) (stating in dicta that non-parties might proceed under Rule 71 to enforce a consent decree entered in their favor); *see also Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 287–89 (D.C.Cir.1993); *Hook v. Arizona*, 972 F.2d 1012, 1014–15 (9th Cir.1992); *Washington Hosp. v. White*, 889 F.2d 1294, 1299 (3d Cir.1989); *Berger v. Heckler*, 771 F.2d 1556, 1565 (2d Cir.1985); *Gautreaux v. Pierce*, 743 F.2d 526, 533 (7th Cir.1984).

This court agrees with the Second and Ninth Circuits which have held explicitly that the Supreme Court's decision in *Blue Chip Stamps* was not intended to preclude nonparties from seeking to enforce court orders where otherwise authorized by the Federal Rules of Civil Procedure, *Hook*, 972 F.2d at 1014–15; *Berger*, 771 F.2d at 1565, and the court believes that this holding is supported by the Eleventh Circuit's position in *Barfus*.

Thus, the *Crum* defendants are mistaken that Rule 71 may never serve as a basis for a non-party to enforce court orders. The court must therefore determine whether Rule 71 authorizes the *Crum* plaintiffs to seek relief under *Frazer*.

---

**4.** *Crum* Doc. no. 307; *Frazer* Doc. no. 514.

**5.** *Crum* Doc. no. 416; *Frazer* Doc. no. 514.

**6.** *Crum* Doc. no. 413; *Frazer* Doc. no. 583.

**7.** *Crum* Doc. no. 420; *Frazer* Doc. no. 584.

### A. Contempt Proceedings

■ Before the court turns to the task of interpreting the reach of Rule 71, however, a brief detour through the law that governs contempt proceedings is necessary.[8] Civil-contempt sanctions enable a court to enforce compliance with its orders and to compensate a party for losses sustained as a result of non-compliance. *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443, 106 S.Ct. 3019, 3033, 92 L.Ed.2d 344 (1986); *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539, 1547 n. 6 (11th Cir.1996). The ability to issue civil-contempt orders is an inherent power of federal courts. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir.1991). The decision to impose sanctions for a party's contemptuous conduct is discretionary, *e.g.*, *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir.2000), but if sanctions are imposed, the court must have found that they are warranted based on clear and convincing evidence. *E.g., id.*

■ Although civil sanctions are discretionary, the law is not silent as to the circumstances in which it is appropriate for a district court to exercise its discretion to permit a litigant to seek sanctions. The former Fifth Circuit held that the most appropriate litigants to bring contempt proceedings were the parties that litigated the case in which the court entered the order to be enforced. *Southern Ry. Co. v. Lanham*, 403 F.2d 119, 125 (5th Cir.1968) ("Civil contempt is 'wholly remedial,' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance.");[9] *Northside Realty Assocs., Inc. v. United States*, 605 F.2d 1348, 1356 (5th Cir. 1979) ("While we need not foreclose altogether the possibility of third party compensatory relief in civil contempt cases, we agree with the District Court that [such relief] ought not to be granted here."). These precedents establish a clear rule that the circumstances in which third parties may enforce court orders through civil-contempt proceedings are limited and that such proceedings are disfavored. *Id.*

The precedent that most clearly developed the contours of this position is *Northside Realty*. There, the United States sought to recover compensatory damages for individuals whose rights were violated by a real-estate corporation that was bound by an injunction prohibiting racially discriminatory housing practices. 605 F.2d at 1350. The United States prosecuted the original case in which an injunction against the real-estate corporation was entered. The government subsequently sought damages for the non-parties against whom the real-estate corporation had allegedly discriminated. Although the Eleventh Circuit found that the real-estate corporation had violated the district court's injunction, it held that compensatory damages through civil-contempt proceedings were unavailable to the non-party individuals whose rights had been violated. *Id.* at 1358. The appellate court summarized its holding as follows: "[T]he Government may not be awarded compensatory damages for nonparties in a civil contempt action brought to enforce a[n] ... injunction. The problems are substantial. The need is not. Absent express congressional mandate, this Court will not aid the building of such a house of cards." *Id.*

The Eleventh Circuit noted a number of factors that weighed in favor of its determination: (1) the relief sought "cannot be characterized as merely an incidental part of the main cause," *id.* at 1357; (2) permitting the relief "would in effect transform the civil contempt proceeding into a representative class action," *id.*; (3) the relief sought would raise "difficult questions concerning the collateral estoppel or res judicata effect to be given to findings raised by the Court in the contempt proceeding and in any subsequent

---

**8.** The court notes that the parties have focused on the question of the reach of Rule 71 and have neglected the question of whether the ambit of law that governs civil-contempt proceedings is wide enough to encompass the *Crum* proceeding.

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

proceeding or proceedings that might be had to determine the amount of damages to be awarded an individual discriminate," *id.*; and (4) other relief is available that is essentially the same as the relief sought in the contempt proceedings. *Id.* at 1357–58 ("Finally, we point out that there is no compelling need for the relief sought by the Government. Congress has authorized a private Title VIII cause of action whereby private plaintiffs may obtain injunctive relief, compensatory damages, and attorney' fees.... Since Congress has authorized an adequate remedy for individual victims of housing discrimination, we see no reason to imply another one.").

*Northside Realty* is, of course, not identical to the litigation currently · before the court. Unlike the cases at bar, it involved questions of discrimination in housing, not employment discrimination. It involved the government seeking enforcement of an injunction for the benefit of non-parties rather than non-parties seeking to enforce an injunction won by the United States. It directly addressed the propriety of monetary sanctions rather than other civil sanctions. And, finally, it nowhere directly based its reasoning on Rule 71.

 Despite the differences between the situation in *Northside Realty* and that that confronts this court, the concerns that governed the Eleventh Circuit's ruling are materially relevant to these proceedings. Each of the considerations that militated against the pursuit of contempt proceedings in *Northside Realty* is present in the *Crum* litigation. First, Congress has authorized specific and wholly adequate remedial schemes for the species of discrimination alleged by the *Crum* plaintiffs: Title VII, § 1981, and § 1983. Indeed, the *Crum* plaintiffs have framed their complaints in terms of these remedial schemes. Second, coming more than 20 years after the entry of the *Frazer* injunctions, the material facts and circumstances of *Crum* litigation cannot in any way fairly be said to be "incidental" to the factual questions litigated in *Frazer*.[10] There is, so to speak, considerable water under the bridge since the relief in *Frazer* was ordered.

The *Crum* plaintiffs have already indicated that they will seek to prosecute this action as a class action, and the court has already set schedules and deadlines for considering the issues of class certification. There is no doubt that the course of action proposed by the *Crum* plaintiffs "would ... transform the civil contempt proceeding into a representative class action." 605 F.2d at 1357. Finally, it is plain that the question of the application of the doctrines of collateral estoppel and res judicata will be raised and will be central to the contempt proceedings.

Because each of the factors that precluded awarding contempt sanctions in *Northside Realty* is present (indeed, central) to the proposed contempt proceedings in *Crum*, it is clear that absent some intervening authority, the *Crum* plaintiffs may not enforce the *Frazer* orders through contempt proceedings. In light of this determination, the issue before the court is whether Rule 71 provides the requisite intervening authority.

### B. Federal Rule of Civil Procedure 71

Federal Rule of Civil Procedure 71 provides:

> "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party; and, when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party."

The *Crum* plaintiffs argue that this rule authorizes them to seek enforcement of the relief granted in *Frazer* because the *Frazer* orders were entered "in favor of" African–Americans who are employed by, or interested in being employed by, the *Crum* defendants. The *Crum* defendants and the United States contend that Rule 71's "in favor of" provision may not be read as a broad grant of authority to non-parties to enforce the *Frazer* orders in the *Crum* litigation. Of course, the question before the court involves construing only the provision of Rule 71 that

---

**10.** Of course, the age of a case is not a bar to a party who may properly seek to enforce a court's ruling. *Florida Ass'n for Retarded Citizens,* 246 F.3d at 1298.

permits a non-party to enforce court orders against a party.[11] As stated, the question is whether Rule 71 provides independent authority for the *Crum* plaintiffs to seek sanctions for contempt against the *Crum* defendants based on the orders entered in *Frazer.* At its heart, this is a matter of the proper interpretation of Rule 71.

■ The canons of textual interpretation are long-settled. The court must begin with the language of the provision itself. *E.g., Federal Reserve Bank of Atlanta v. Thomas,* 220 F.3d 1235, 1239 (11th Cir.2000) ("the starting point for all statutory interpretation is the language of the statute itself"). If the provision speaks with clarity to an issue, then under all but the most extraordinary circumstances judicial inquiry as to the provision's meaning "is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). However, where a provision is ambiguous, the court must look beyond the text to other sources that are evidence of the meaning of the provision. *E.g., Thomas,* 220 F.3d at 1239 ("If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent."); *see also Halperin v. Regional Adjustment Bureau, Inc.,* 206 F.3d 1063, 1067 (11th Cir.2000).

Rule 71's "in favor of" provision is ambiguous: it may be read broadly to reach classes of incidental beneficiaries or it may be read more narrowly to reach situations in which an order provides a specific benefit to readily identifiable individuals. The text of the rule itself does not resolve this issue. Thus, the court must seek guidance from extrinsic sources to determine the contours of the right of enforcement provided by Rule 71. *Thomas,* 220 F.3d at 1239; *Halperin,* 206 F.3d at 1067.

---

**11.** The complex questions of due process that are inherent in the enforcement of an order against non-parties have little or no bearing on the court's analysis.

**12.** The Advisory Committee notes indicate that the 1987 amendment was technical and not substantive. *See* Fed.R.Civ.P. 71, Advisory Committee Notes.

**13.** The complete text of Rule 11 provides:

### 1. The History of Rule 71

The court looks first to the history of the rule. Clio rarely answers questions about the past directly or unambiguously. Her songs, though beguiling, are notoriously subject to conflicting interpretations. Nonetheless, Rule 71's history, on the whole, indicates that it was intended to enable clearly discernible and direct non-party beneficiaries to enforce specific rights and benefits conferred by court orders. Rule 71 was adopted in 1937 and has been amended once since then, in 1987.[12] Fed.R.Civ.P. 71, Advisory Committee Notes. The rule is a rewording of former Equity Rule 11, which enabled a non-party to enforce orders made in his "favor ... by the same process as if he were a party" and made a non-party against whom an order was entered to "be liable to the same process for enforcing obedience to such orders as if he were a party." Rules of Practice for the Courts of Equity of the United States, Rule 11, 226 U.S. 649, 652 (1912).[13]

The history of Equity Rule 11 is marked by few reported cases. Those cases, however, reveal that Rule 11 was applied narrowly. For instance, *Farmers' Loan & Trust Co. v. Chicago & A. Ry. Co.,* 44 F. 653 (C.C.D.Ind. 1890), involved a sale on the foreclosure of a railroad mortgage; the court directed its receiver to turn over possession of the railroad to the purchaser's assignee, the Chicago & Erie Company. The court reserved the right to resume possession if the assignee failed to pay the purchase price into the court. 44 F. at 654–659. The Chicago & Erie Company petitioned the court to exclude another rail company, the Wabash Company, from a stretch of rail. *Id.* at 658. The Wabash Company objected that Chicago & Erie could

"Process in Behalf of and Against Persons Not Parties.

Every person, not being a party in any cause, who has obtained an order, or in whose favor an order shall have been made, may enforce obedience to such order by the same process as if he were a party; and every person, not being a party, against whom obedience to any order of the court may be enforced, shall be liable to the same process or enforcing obedience to such orders as if he were a party."

not invoke the assistance of the court. The court held otherwise, finding that Chicago & Erie was able to request relief under the identical predecessor to Rule 11. *Id.* at 659. The application of the equity rule, however, was narrow: the party in whose favor the order was entered had been specifically identified and its rights and obligations had been clearly defined and circumscribed.

In *Robert Findlay Manufacturing Co. v. Hygrade Lighting Fixture Corp.*, 288 F. 80 (S.D.N.Y.1923), the court applied Equity Rule 11 to pierce the corporate veil to permit the special master on the case to recover his fees against the owners of the defendant corporation. 288 F. at 80. The court reasoned that, under Equity Rule 11, it had the power to enforce an order requiring the payment of fees against the owners. *Id.* at 81. The court's decision applied the provision of the rule permitting an order to be enforced against a non-party, rather than determining the scope of who might be able to enforce the order itself. *Id.* at 80. Nonetheless, the decision suggests a relatively narrow scope and purpose for the application of the rule: the court determined that the interests of the non-party individuals against whom the court enforced its order were "so closely connected with the [party] defendant" as to be almost "identical." *Id.*

Rule 11, thus, appeared neither to permit broad process against non-parties, nor to permit non-parties broadly to invoke equitable intervention. Courts that construed Rule 11 required a substantial confluence of interests between the non-party and the party, or clear specification in the order of non-parties who might proceed under Rule 11. This court has been able to find no case that construes the scope of Equity Rule 11 as broadly as the *Crum* plaintiffs here propose,

to reach any beneficiary of an order; nor has the court, cognizant of the differences in federal litigation between the late nineteenth and early twentieth centuries and today,[14] found equity cases that would suggest that such a broad application was envisioned.

This understanding appears to be shared by the drafters of Rule 71. The advisory committee notes to Rule 71 do not explicitly indicate that the scope of Equity Rule 11 was meant to define the scope of Rule 71, but the notes cite a number of Rule 11 cases as guidance. Fed.R.Civ.P. 71, Advisory Committee Notes; *see also Terrell v. Allison,* 88 U.S. (21 Wall.) 289, 22 L.Ed. 634 (1874); *Farmers' Loan,* 44 F. at 653; *Hygrade Lighting Fixture,* 288 F. at 80, *Thompson v. Smith,* 23 F. Cas. 1093 (C.C.D.Minn.1870) (No. 13,977). Of course, two of these cases, *Farmers' Loan* and *Hygrade Lighting Fixture,* as stated, interpreted Rule 11 or its predecessor Rule 10. *Terrell* and *Thompson,* like *Hygrade Lighting Fixture,* are not cases about who may enforce a court order, but against whom such an order may be enforced, and do not address the question of when a non-party may enforce a court order.

Thus, the historical background against which Rule 71 was drafted and the terms in which its authors understood its application strongly suggest that the provision was intended to enable non-parties to pursue relief in court in circumstances where they had been specifically identified as beneficiaries of an order. Of course, that history is not necessarily controlling. The nature of litigation in federal courts has evolved greatly since 1937, particularly as regards what is generally known as public-law litigation.[15] Nonetheless, the history of the rule counsels against extending it as far as the *Crum* plaintiffs here desire.

**14.** Carl Tobias, *Public Law Litigation and the Federal Rules of Civil Procedure,* 74 Cornell L.Rev. 270 (1989); Stephen N. Subrin, *How Equity Conquered Common Law: The Federal Rules of Civil Procedure in Historical Perspective,* 135 U. Pa. L.Rev. 909 (1987); Judith Resnik, *Failing Faith: Adjudicatory Procedure in Decline,* 53 U. Chi. L.Rev. 494 (1986). There is considerable authority for the proposition that the earlier decisions that were grounded in Rule 11 and private-law conceptions of litigation are of limited value in addressing modern institutional litigation, in

which public and private rights are primarily at issue, and in which injury is only partially compensable in monetary terms. Doug Rendleman, *Compensatory Contempt: Plaintiff's Remedy When a Defendant Violates and Injunction,* 1980 U. Ill. L.F. 971, 976–77.

**15.** For more detailed discussions of the development of public-law litigation and the history of the Federal Rules of Civil Procedure, see the articles cited *supra* note 14.

### 2. Judicial Interpretations of Rule 71

Bearing the history of Rule 71 in mind, the court turns to the decisions that have construed Rule 71. None of the judicial decisions that have construed the rule resolves the question of how far the scope of the "in favor of" provision should reach.

Most of the decisions that have interpreted Rule 71 have done so in the context of proceedings brought to enforce consent decrees. *E.g., Rafferty v. NYNEX Corp.,* 60 F.3d 844 (D.C.Cir.1995); *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280 (D.C.Cir.1993); *Berger v. Heckler,* 771 F.2d 1556 (2d Cir.1985). Such cases are only of limited use in addressing the question before the court. A crucial task in interpreting consent decrees is ascertaining how the parties intended to delineate who might fall within the range of persons who might invoke it. *E.g., Reynolds,* 202 F.3d at 1316 (applying canons of contract interpretation to interpreting a consent decree). As the Second Circuit Court of Appeals has aptly stated, "consent decrees are a hybrid in the sense that they are at once both contracts and orders; they are construed largely as contracts but are enforced as orders." *Berger,* 771 F.2d at 1567–68. Thus, the parties to a consent decree are free, within the limits that the law provides, to indicate beneficiaries, create zones of interest for the decree's enforcement, and specify how relief may be sought for violations of the decree. Thus the court must reject the argument of the United States that Rule 71 does not extend to permit private, non-party enforcement of orders entered in cases litigated by the United States. The cases on which the government relies to support this contention are cases in which courts were faced with the task of construing consent decrees.[16] *E.g., SEC v. Prudential Securities, Inc.,* 136 F.3d 153, 158 (D.C.Cir.1998). However, the *Prudential Securities* case rejected such a construction of Rule 71. The court stated that "the fact that the government is involved is not in itself fatal to a third party enforcement action." *Id.*

As the *Crum* plaintiffs correctly argue, court orders entered after a trial on the merits are not the product of agreement by the parties, but indicate, rather, that agreement was not reached and a judicial resolution of the conflict was needed. The *Frazer* orders that the private plaintiffs seek to enforce are examples of the latter species of decree, not the former. The *Crum* plaintiffs correctly note that the *Prudential Securities* court decided that case on contract principles as applied to consent decrees. Cases that turn on the judicial interpretation of consent decrees as contracts are not dispositive of the issue before the court. *Berger,* 771 F.2d at 1567–68.

The cases that have confronted the question of the scope of Rule 71 outside the context of consent-decree enforcement, however, indicate some parameters in how Rule 71 may be construed. It is clear that Rule 71 does not confer standing upon non-parties to pursue relief that they would not have been able to seek had they been parties. *Moore v. Tangipahoa Parish School Bd.,* 625 F.2d 33, 34 (5th Cir.1980) (Rule 71 cannot be adopted by one to enforce an order in an action in which the non-party has no standing to sue); *Lasky v. Quinlan,* 558 F.2d 1133 (2d Cir.1977) (Rule 71 cannot be used by a party to enforce an order in an action in which the party no longer has standing to sue).

The *Crum* plaintiffs, relying on *Tangipahoa,* urge the court to conclude that article III standing is the only relevant consideration in determining the reach of Rule 71. They argue that, if a non-party falls within the zone of interests sufficient to establish article III standing, then Rule 71 provides authority to seek enforcement of an order.[17]

---

16. In part, the argument of the United States notes that the interests of the government in pursuing civil-rights litigation may well be different from the interests of private individuals in such litigation. Moreover, the United States contends that the public purpose behind such government action should not be permitted to be subordinated to the interests of private parties, who may seek to enforce orders entered in such proceedings in ways that may conflict with the overriding public interests pursued by the United States.

17. The court notes that the United States concedes that at least some of the *Crum* plaintiffs appear to meet the requirements of the "zone of interests" prong of standing doctrine. *See* Response of the United States to Private Plaintiffs'

By this reasoning, the "in favor of" provision of Rule 71 is simply a proxy for standing. This argument, while superficially appealing, is logically flawed. It is indisputable that a party must have standing in order to institute any judicial proceedings in federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 573, 112 S.Ct. 2130, 2143, 119 L.Ed.2d 351 (1992)(holding that standing is a requirement for a case or controversy under article III). However, it does not follow that the contours of Rule 71 are coterminous with the limits of standing: simply because a non-party may have standing under the Constitution does not mean that he or she may proceed under Rule 71. Thus, *Tangipahoa* states the obvious and stands for the uncontroversial proposition that standing is a prerequisite to proceeding under Rule 71. *Tangipahoa* cannot be read for the conclusion that article III standing is all that is required to seek to enforce a court order under Rule 71.

Based on the precedents construing Rule 71, this court agrees with the D.C. Circuit that "the precise contours of Rule 71 ... remain unclear." *Beckett,* 995 F.2d 280, 288 (D.C.Cir.1993). There is no clear judicial precedent that establishes, one way or the other, whether Rule 71's requirements are met by the *Crum* plaintiffs.

### 3. The Reach of Rule 71

An analysis of the history of Rule 71 and the relevant judicial decisions that have construed it in contexts analogous to the present litigation do not resolve the question of how narrowly or broadly the "in favor of" provision of Rule 71 may be construed. As stated, the question that the court must answer is whether, in light of Eleventh Circuit precedent that counsels against permitting the *Crum* plaintiffs to go forward against the *Crum* defendants through civil-contempt proceedings, Rule 71 provides independent authority to so proceed. The court, based on the inconclusive history and precedent that define the doctrine of Rule 71, considers that the rule does not so provide.

It is a fundamental axiom of legal decision-making that courts should strive to avoid construing the law in a manner that creates or results in contradiction or conflict. This has most obviously been stressed in the interpretation of statutes. *E.g., Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (courts should strive to interpret statutes in a manner that avoids unnecessary conflict). However, this canon is equally applicable here. The provision of Rule 71 that is at issue is ambiguous. The court, absent clear authority, will not stretch its interpretation of an ambiguous rule of civil procedure so as to override established law of the Eleventh Circuit. Accordingly, the court concludes that the *Crum* plaintiffs' original motion for civil contempt was properly denied and that the *Crum* plaintiffs' motion to reconsider is without merit and will be denied.

For the reasons stated, it is ORDERED that the motion to alter, amend, or reconsider, etc., filed by the *Crum* plaintiffs on July 2, 2001 (*Crum* Doc. no. 465; *Frazer* Doc. no. 596), is denied.

Motion to Alter, Amend, or Reconsider Denial of Contempt Proceedings. (*Crum* Doc. no. 486; *Frazer* Doc. no. 601).